LAKES AND RIVERS TRANSFER, A DIVISION OF JACK GRAY TRANS-PORT, INC., Appellant–Plaintiff,

v.

RUDOLPH ROBINSON STEEL COMPANY, Appellee–Defendant.

No. 64A05–9705–CV–188.

Court of Appeals of Indiana.

Feb. 26, 1998.

Steven M. Bush, Millbranth and Bush, Valparaiso, for Appellant–Plaintiff.

Anthony Debonis, Jr., David S. Gladish, Smith & DeBonis, Highland, James E. Mercante, Kroll & Tract, New York City, for Appellee–Defendant.

## OPINION

BARTEAU, Judge.

Lakes and Rivers Transfer (Lakes and Rivers) appeals a grant of summary judgment in favor of Rudolph Robinson Steel Company (Robinson). Lakes and Rivers raises two issues,[1] which we expand and re-

---

1. Initially, we note that it has been particularly burdensome for us to determine what assertions of error Lakes and Rivers is making on appeal. In its brief, Lakes and Rivers offered the following "Statement of the Issues": "Did the trial court error (sic) in denying the motion for summary judgment of plaintiff, Lakes and Rivers, and further error (sic) in granting summary judgment for the defendant, Rudolph Robinson Steel Company?" Brief of Appellant at 1. Even the argument portion of the brief provides no subdivisions to assist us in understanding what Lakes

state as:

1. Whether Robinson's inquiry about the price of Lakes and Rivers' services created an oral contract obliging Robinson to pay for those services after they were performed at the request of another party?

2. Whether Robinson's eleven-day delay [2] in responding to Lakes and Rivers' inquiry regarding who would pay for Lakes and Rivers' services estops Robinson from denying that it had a contract with Lakes and Rivers?

3. Whether Robinson was unjustly enriched by the services Lakes and Rivers provided, when the ship owner, and not Robinson, was obliged by contract to arrange and pay for those services?

We affirm.

## FACTS

On October 24, 1994, Robinson entered into an agreement with Orion Maritime, Inc. (Orion) to ship some imported steel to the United States for sale to Robinson's customers in the Midwest. The steel was to be shipped on the M/V Pauline Olivieri, a ship owned and operated by Orion, and it was to be unloaded at Detroit and Chicago. Robinson and Orion agreed that Robinson was to provide and pay for stevedores to discharge the cargo from the ship.

The ship first docked at Detroit, where only a part of the steel bound for Detroit was unloaded. Orion then, on its own initiative, diverted the ship to Burns Harbor, Indiana, which was not one of its scheduled ports.

The Chicago cargo, along with the remainder of the Detroit cargo, was unloaded there. The cargo was discharged beginning on December 20, 1994, and it was fully unloaded by the morning of December 23, 1994.

Orion's diversion of the ship caused Robinson to incur unexpected additional costs for shipping the steel unloaded at Burns Harbor to its customers, so Orion agreed to order and pay for the stevedoring services associated with the discharge of the ship's cargo at Burns Harbor. While that agreement was being negotiated, a Robinson representative called Lakes and Rivers to determine the rates Lakes and Rivers charged for unloading that kind of cargo, so that Robinson could decide whether Orion's agreement to pay the stevedore costs would adequately defray Robinson's additional transportation expenses. Robinson and Lakes and Rivers did not discuss during that call who would be paying the stevedore costs.

Shortly before the ship arrived at Burns Harbor, a local agent for Orion called a representative of Lakes and Rivers. He indicated the ship would be arriving, and needed to be unloaded quickly because the St. Lawrence Seaway would be closing shortly. The agent did not say who he was representing, but the Lakes and Rivers employee to whom he spoke had dealt with the agent for some 17 years, and knew the agent usually represents ship owners. The day before the ship arrived, Lakes and Rivers sent a fax inquiry asking Robinson who would be responsible for stevedoring charges.

and Rivers' contentions are. Rather, the argument contains the following two subdivisions: "Summary Judgment and Standard of Review," and "Application of Facts to Standard of Review."

We remind counsel that they are obligated by the appellate rules to include in their brief a statement of the issues presented for review. Ind. Appellate Rule 8.3(A)(3). Lakes and Rivers' failure to state the issues has substantially impeded our consideration of the issues presented. Nothing is more important in an appeal than a concise statement of the issues upon which an appellant relies, and we must be able to discern the issues from an appellant's brief, without reference to the record. *Moore v. State*, 441 N.E.2d 220, 221–22 (Ind.Ct.App.1982). In *Moore*, we dismissed the appeal when the statement of the issues merely referred us to the issues that had been raised in the appellant's motion to correct

error. We determined that such a statement of the issues did not constitute a good faith effort to comply with our rules, *id.* at 222, and we noted that while the strictness of our rules was sometimes "relaxed," that was only true in cases where we could clearly understand from the briefs the questions sought to be presented. *Id.* at 221.

We prefer to decide appeals on the merits, and we choose to do so in this case. However, we remind counsel that the absence of a useful statement of the issues subjects an appeal to dismissal.

**2.** Lakes and Rivers raises a related laches argument for the first time in its reply brief. Any argument not presented in the original brief is waived and a party may not revive it by arguing the issue in the reply brief. *Meyers v. Langley*, 638 N.E.2d 875, 879 (Ind.Ct.App.1994).

A week after the ship was unloaded, Lakes and Rivers again asked Robinson who would be responsible for the stevedoring costs. Robinson responded the same day that Orion would be responsible, and it faxed to Lakes and Rivers a copy of its agreement with Orion to that effect.

From that date through April of 1995, Lakes and Rivers repeatedly attempted to collect the charges for its stevedore services from Orion, and Orion repeatedly acknowledged its liability. Lakes and Rivers did not invoice Robinson or otherwise attempt to collect from Robinson during that time. But after it failed to collect from Orion, Lakes and Rivers made a demand on April 21, 1995 for payment from Robinson. Lakes and Rivers then brought this action against Robinson, and on cross-motions for summary judgment, the trial court granted summary judgment in favor of Robinson.

### STANDARD OF REVIEW

In reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Grose v. Bow Lanes, Inc.*, 661 N.E.2d 1220, 1224 (Ind.Ct.App.1996).

The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1183 (Ind.Ct.App. 1996), *reh'g denied, transfer denied.* On appeal from a grant of summary judgment, the burden is on the appellant to prove the trial court erred in determining there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 813 (Ind.Ct.App.1995).

### THE FORMATION OF A CONTRACT

Lakes and Rivers contends that an oral contract was entered into, binding Robinson to pay for the stevedore services Lakes and Rivers provided, when Robinson made its telephone inquiry about the rates Lakes and Rivers charged.

■ For a completed oral contract to come into being, the parties must agree to all terms of the contract. *Keating v. Burton*, 617 N.E.2d 588, 592 (Ind.Ct.App.1993). The designated evidence indicates there was no agreement on a crucial term of this alleged contract: that is, who was to pay for the services Lakes and Rivers was to provide. Robinson's employee never represented to Lakes and Rivers, either orally or in writing, that Robinson was going to be responsible for the stevedore services. Rather, the evidence indicates nothing more than that the Lakes and Rivers employee who spoke to the Robinson employee "assumed" Robinson would pay, and assumed Orion was not responsible for payment. R. at 258.

■ We are unwilling to hold that a mere inquiry about the price of a product or service, without more, creates a binding contract which obliges the inquiring party to purchase the product or service. The designated evidence does not establish that Lakes and Rivers reached an agreement with Robinson on all the terms of the contract Lakes and Rivers alleges, and the trial court correctly found that there was no contract between the parties.[3]

### ESTOPPEL TO DENY A CONTRACT

■ A plaintiff seeking to establish estoppel must show: 1) a representation or concealment of a material fact; 2) made by a person with knowledge of the fact and with the intention that the other party act upon it; 3) to a party ignorant of the matter; and 4) which induces the other party to act upon it to his or her detriment. *Ind. Dept. of Envir. Mgt. v. Conard*, 614 N.E.2d 916, 921 (Ind. 1993).

---

**3.** Since we find there was no contract between Lakes and Rivers and Robinson, we need not address Lakes and Rivers' argument, raised for the first time in its reply brief, that Lakes and Rivers was a third-party beneficiary of that contract.

We find no estoppel because the evidence discloses no representation or concealment by Robinson which induced Lakes and Rivers to act to its detriment. Lakes and Rivers unloaded Robinson's cargo at the request of Orion's agent, without first determining who would be responsible for payment. When Robinson was finally asked by Lakes and Rivers who would pay for the stevedore services, Robinson responded that Orion was responsible. We find no support in the designated materials for Lakes and Rivers' suggestion that it would not have performed its services had it known Orion, and not Robinson, was responsible for payment.

### UNJUST ENRICHMENT

Lakes and Rivers next suggests that we imply a contract obliging Robinson to pay for the stevedore services in order to prevent Robinson's unjust enrichment. A party seeking to recover on an implied contract theory must show that a benefit was rendered to the other party at that other party's express or implied request. *Timothy Kelly and Assoc. v. Ill. Farmers Ins. Co.*, 640 N.E.2d 82, 86 (Ind.Ct.App.1994).

Lakes and Rivers finds an implied request for its services in Robinson's request for a "confirmation" of Lakes and Rivers' rates, and in Robinson's "renegotiation"[4] of the rates for one of Lakes and Rivers' services. But as we noted in our analysis of Lakes and Rivers' contract argument, we do not find an inquiry about rates, without more, to constitute a request for the provision of the services for which the rates are requested.

We also note that Robinson's request for a "confirmation" of the rates did not come until two days *after* Lakes and Rivers had begun unloading the cargo at the express request of Orion's agent. Because Lakes and Rivers had already begun performing services at Orion's express request, we decline to impose liability on Robinson based on an allegation of a subsequent "implied" request.

4. What Lakes and Rivers characterizes as a "renegotiation" of its rates took place in a telephone conversation with Robinson two days after Lakes and Rivers started unloading the cargo. In a fax to Robinson, Lakes and Rivers had quoted a rate of $3.90 per metric ton for unloading skidded coils. In a return phone call, Robinson's representative stated "Eddie, in Chicago they charge $3.75." Lakes and Rivers then lowered its rate to $3.75. R. at 253.

### CONCLUSION

Robinson had no express or implied contractual obligation to pay Lakes and Rivers for services which Orion requested and had agreed with Robinson to pay for, and Robinson was not estopped from denying that it had such a contractual obligation. The trial court properly entered summary judgment for Robinson.

Affirmed.

SHARPNACK, C.J., and GARRARD, J., concur.