**LAKES AND RIVERS TRANSFER, A DIVISION OF JACK GRAY, Appellant–Plaintiff/Counter Defendant,**

v.

**RUDOLPH ROBINSON STEEL COMPANY, Appellee–Defendant/CounterPlaintiff.**

No. 64A04–9906–CV–289.

Court of Appeals of Indiana.

Sept. 29, 2000.

---

Steven M. Bush, Millbranth and Bush, Valparaiso, Indiana, Peter J. Manous, Kopack & Associates, Merrillville, Indiana, Attorneys for Appellant.

Anthony DeBonis, Jr., Smith & DeBonis, Highland, Indiana, Attorneys for Appellant.

## OPINION

BAILEY, Judge

### Case Summary

Appellant (Plaintiff and Counter–Defendant below) Lakes and Rivers Transfer ("Lakes and Rivers") appeals the trial court's order granting Appellee (Defendant and Counter–Plaintiff below) Rudolph Robinson Steel Company's ("Robinson") motion for partial summary judgment on the issue of liability. We reverse.

### Issues

Lakes and Rivers presents one issue for our review, and we raise an additional issue *sua sponte*. We restate those issues as:

I. Whether the trial court had subject matter jurisdiction over Robinson's counterclaim; and,

II. Whether an attachment-defendant (here Robinson) in a civil action is entitled to recover damages for wrongful and oppressive attachment, as a matter of law, when it prevails via summary judgment in the underlying action.

### Facts and Procedural History

In May of 1995, Lakes and Rivers filed a complaint against Robinson seeking to recover the value of stevedoring services it had rendered to Robinson, a foreign corporation. Additionally, in accordance with Indiana Trial Rule 64(B), Lakes and Rivers requested and obtained a pre-judgment order attaching Robinson's cargo in Lakes and Rivers's possession until final resolution of the merits of the underlying action. (R. 5.) The attachment was obtained *ex-parte*; however, shortly thereafter the order was challenged by Robinson through its Motion to Dissolve Order Freezing Assets. (R. 5.) In June of 1995, a hearing was held on Robinson's Motion to Dissolve Order Freezing Assets, after which the trial court denied said motion, leaving the attachment order in effect. (R. 6.)

Some time later, both parties filed motions for summary judgment on the underlying claim. (R. 6.) The court granted Robinson's motion for summary judgment and denied Lakes and Rivers's motion for summary judgment in an order dated January 29, 1997. (R. 6.) Lakes and Rivers appealed the trial court's decision and this Court affirmed. (R. 8–15.); *Lakes and Rivers Transfer v. Rudolph Robinson Steel Company*, 691 N.E.2d 1294 (Ind.Ct. App.1998). Transfer was not sought by either party.

On July 8, 1998, after the trial court granted its Motion for Leave to File Counterclaim, Robinson filed its counterclaim alleging that the pre-judgment attachment by Lakes and Rivers was wrongful and oppressive, and seeking damages. (R. 17.) Lakes and Rivers filed its Answer denying any wrongful or oppressive conduct and asserting various affirmative defenses. (R. 40–43.) Robinson subsequently filed its Motion For Partial Summary Judgment, which pertained to its counterclaim and was limited to the issues of liability and all of Lakes and Rivers's affirmative defenses. (R. 52–54.) After the motion was duly briefed and heard by the trial court, the trial court entered its order granting partial summary judgment in favor of Robinson, finding that there was no genuine issue of material fact regarding Lakes and Rivers's liability and that Robinson was entitled to judgment on its counterclaim for wrongful attachment as a matter of law. (R. 124.) This appeal ensued.

### Discussion And Decision

#### I. Subject Matter Jurisdiction

Initially, we address, *sua sponte*, the issue of whether the trial court had subject matter jurisdiction to entertain Robinson's counterclaim.

##### Standard of Review

Subject matter jurisdiction concerns the power of the court to hear and to determine a general class of cases to which the proceedings before it belong. *Santiago v. Kilmer*, 605 N.E.2d 237, 239 (Ind.Ct.

App.1992). " 'The only relevant inquiry in determining whether the court has subject matter jurisdiction is to ask whether th[e] kind of claim the plaintiff advances falls within the general scope of authority conferred upon such court by the constitution or statute.' " *Harp v. Indiana Dept. of Highways,* 585 N.E.2d 652, 656 (Ind.Ct. App.1992) (quoting *State ex rel. Young v. Noble Circuit Court,* 263 Ind. 353, 356, 332 N.E.2d 99, 101 (1975)). The lack of subject matter jurisdiction can be raised at any time, and, if the parties do not question it, the trial court or Court of Appeals is required to consider the issue *sua sponte. Albright v. Pyle,* 637 N.E.2d 1360, 1363 (Ind.Ct.App.1994). The issue of jurisdiction is a question of law. *Nishikawa Standard Co. v. Van Phan,* 703 N.E.2d 1058, 1059 (Ind.Ct.App.1998). Thus, because we are faced with a pure question of law, our review will be *de novo. Serletic v. Noel,* 700 N.E.2d 1159, 1162 (Ind.Ct.App. 1998).

### Argument and Analysis

■ While not addressed by either party in its brief to this Court, Lakes and Rivers argued to the trial court, in its Answer to Robinson's counterclaim, that said counterclaim should be dismissed because the trial court lacked subject matter jurisdiction. Specifically, Lakes and Rivers asserted that because "the cause of action under which [Robinson] was attempting to pursue a counterclaim has been concluded, the Court at this time has no jurisdiction over the subject matter of the [counterclaim]." (R. 42.) We disagree.

■ As stated earlier, jurisdiction over the subject matter is the power of the court to hear and determine cases of the general class to which the proceedings then before the court belong. *Community Hospitals of Indiana, Inc. v. Estate of North,* 661 N.E.2d 1235, 1239 (1986). If a tribunal possesses the power to determine cases of the general class to which the particular case belongs, then it possesses

subject matter jurisdiction to consider the particular case. *Id.* Indiana Code section 33–5–38–1 creates the superior court in Porter County. Indiana Code section 33–5–38–4 grants general jurisdiction to that superior court, giving it "[o]riginal, appellate, concurrent, and coextensive jurisdiction with the circuit court in all civil cases, criminal cases, and probate matters." *See also State v. Monfort,* 723 N.E.2d 407, 414 (Ind.2000) (stating that superior courts are courts of general jurisdiction). Hence, the Legislature has specifically bestowed jurisdiction on the Porter Superior Court to hear the type of claim at issue in this cause. Moreover, Indiana Code section 34–25–2–23 provides that "[e]very defendant is entitled to an action on the written undertaking of the plaintiff or creditor by whose proceedings in attachment the defendant is aggrieved, if it appears that the proceedings were wrongful and oppressive."

Our review of the record reveals that Lakes and Rivers invoked the jurisdiction of the Porter Superior Court when it filed its complaint, based on breach of contract and equitable theories, and when it further requested that the trial court issue a pretrial attachment order. Thereafter, Lakes and Rivers submitted to the Porter Superior Court a written undertaking with a letter of credit in the amount of $200,-000.00, pursuant to Indiana Code section 34–25–2–5, in the event it was not successful at trial. Once Lakes and Rivers lost its appeal and the trial court's order granting summary judgment in favor of Robinson became final, Robinson petitioned the Porter Superior Court for leave to file its counterclaim against Lakes and Rivers for wrongful and oppressive conduct. The trial court granted Robinson's request for leave and Robinson filed its counterclaim shortly thereafter.

■ Despite Lakes and Rivers's arguments to the contrary, we find, based on the foregoing, that the trial court possessed the requisite subject matter jurisdiction to entertain Robinson's counter-

claim. Courts of general jurisdiction are presumed to have subject matter jurisdiction. *In re Marriage of Duke,* 549 N.E.2d 1096, 1099 (Ind.Ct.App.1990). Further, the trial court had the power to hear and determine cases of the general class to which the proceedings then before it belonged, that is, to hear and determine breach of contract and equitable relief cases. Lakes and Rivers, having initially invoked the power of the Porter Superior Court for its benefit, may not now assert lack of jurisdiction as a defense to recovery against the attachment bond. *See Ashland Oil, Inc. v. Arnett,* 496 N.E.2d 1313, 1319 (Ind.Ct.App.1986) (holding that appellants, who had invoked the action of the courts for their benefit, were prohibited from later asserting lack of jurisdiction as a defense to recovery on the bond), *rev'd in part on other grounds,* 507 N.E.2d 561 (Ind.1987).

We further note that Indiana Trial Rule 65.1 details the proper procedure for the instigation of an action upon an attachment bond and provides additional guidance for implementing the jurisdiction of the court in such matters. For example, Indiana Trial Rule 65.1 states that an action on the undertaking may be instigated by the filing of a motion, rather than the filing of a separate action. *See also Ashland Oil, Inc.,* 496 N.E.2d at 1319. Moreover, Indiana Trial Rule 65.1 provides that:

> Whenever these rules or other laws require or permit the giving of security by a party to a court action or proceeding, and security is given in the form of a bond ... each surety *submits himself to the jurisdiction of the court* . ... His liability *may be enforced on motion without the necessity of an independent action.* ... This rule applies to bonds or security furnished on appeal, and *enforcement shall be in the court to which the case is returned after appeal.*

(Emphasis added.) Thus, Robinson properly filed its counterclaim for damages with the Porter Superior Court after the result of Lakes and Rivers's original appeal became final. Moreover, we point out that because the relief sought by Robinson for wrongful and oppressive attachment pursuant to Indiana Code section 34–25–2–23 was dependant upon Lakes and Rivers's failure to prevail in its action against Robinson, Robinson's counterclaim for wrongful attachment could not have been brought prior to a final resolution of the underlying cause on its merits and thus was, at best, a permissive counterclaim. *See Indiana & Michigan Elec. Co. v. Terre Haute Industries, Inc.,* 467 N.E.2d 37, 41 (Ind.Ct.App.1984) (holding that if a claim is not mature at the time an answer is filed, it cannot be a compulsory counterclaim but is, at best, a permissive counterclaim); *see also* Indiana Trial Rule 13(E).[1] Based on the foregoing, we conclude that the trial court possessed subject matter jurisdiction to entertain Robinson's counterclaim in the underlying cause.

## II. Summary Judgment/Pre–Trial Attachment

We now turn to Lakes and Rivers's substantive argument that the trial court erroneously granted Robinson's motion for partial summary judgment.

### Standard of Review

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Dible v. City of Lafayette,* 713 N.E.2d 269, 272 n. 2 (Ind.1999). Thus, summary judgment is appropriate only when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 984 (Ind.1998). If the moving party meets these two requirements, the burden then shifts to the non-movant to respond with

---

**1.** Indiana Trial Rule 13(E) states "[a] claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."

specifically designated facts that establish the existence of a genuine issue for trial. *Interstate Cold Storage, Inc. v. General Motors Corp.*, 720 N.E.2d 727, 729 (Ind.Ct. App.1999), *trans. denied.*

On review, we may not search the entire record to support the judgment, but may only consider that evidence which was specifically designated to the trial court. *Askren Hub States Pest Control Services, Inc. v. Zurich Insurance Co.*, 721 N.E.2d 270, 274 (Ind.Ct.App.1999). Moreover, we do not reweigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind.1994). We further note that a presumption of validity clothes a trial court's grant of summary judgment, and the appellant has the burden of demonstrating to this Court that the trial court's grant of summary judgment was erroneous. *Bunch v. Tiwari*, 711 N.E.2d 844, 848 (Ind. Ct.App.1999). However, we must carefully assess the trial court's decision to ensure that the non-movant was not improperly denied his day in court. *Id.*

### Argument and Analysis

Lakes and Rivers argues on appeal that the trial court erroneously granted Robinson's motion for partial summary judgment on the issue of liability pertaining to Robinson's counterclaim. Specifically, Lakes and Rivers states that the pre-trial attachment it obtained in the underlying cause was not wrongful or oppressive, but that said attachment was obtained in full compliance with Indiana Trial Rule 64(B) in that its claim against Robinson was (1) for the recovery of money for services it had provided, (2) based on contract and equitable theories, and that (3) Robinson was a foreign corporation. Lakes and Rivers further asserts that if Robinson succeeds on its argument that the attachment was wrongful simply because Robinson ultimately prevailed on its summary judgment motion, Indiana Trial Rule 64(B), in essence, would be totally abrogated and the practical effect of such a ruling would be that any pre-judgment attachment would be deemed wrongful and oppressive whenever a plaintiff was not successful on the merits. Lastly, Lakes and Rivers points out that even though the pre-trial attachment was originally obtained through an *ex-parte* proceeding, Robinson immediately thereafter objected to said attachment, filed a Motion to Dismiss Order Freezing Assets, and participated in a hearing where it presented argument and evidence in an effort to show the attachment order should be vacated. Despite these efforts, the trial court denied Robinson's motion to vacate. Thus, Lakes and Rivers argues, the trial court "obviously found nothing wrongful or oppressive concerning the [attachment] order since the motion to vacate was denied and the order was left standing." (Appellant's brief at 7.)

Robinson counters that because Lakes and Rivers failed to support any of its claims against Robinson with enough evidence to proceed to trial, Lakes and Rivers's pre-trial attachment was wrongful and oppressive as a matter of law, leaving Lakes and Rivers in no different position than an attachment-plaintiff who has either had its case dismissed or could not sustain its case for want of jurisdiction. Robinson further asserts that a person who suffers actual damages in the form of a loss of property and expenses in defending against a claim that proves to be groundless is entitled to redress for wrongful and oppressive attachment without having to prove probable cause, malice or bad faith.

We begin our analysis by reviewing the relevant trial rules and statutes. An "attachment" is an ancillary proceeding auxiliary or incidental to the main action, by which the alleged debtor's property, subject to execution, is taken to secure the payment of any judgment that may be rendered in the main action. *Commercial Credit Corp. v. Ensley*, 136 Ind.App. 389, 199 N.E.2d 108, 109 (1964); *see also Ashland Oil, Inc.*, 496 N.E.2d at

1318. Moreover, an attachment is a statutory *ex parte* proceeding. *Id.* at 1316. Indiana Trial Rule 64(B) provides, among other things, for pre-judgment attachment of personal property, in pertinent part, as follows:

(B) *Attachment or attachment and garnishment.* Attachment or attachment and garnishment shall be allowed in the following cases . . . :

(1) It shall be a cause for attachment that the defendant . . . is a foreign corporation. . . .

. . . .

(3) Attachment or attachment and garnishment shall be allowed in favor of the plaintiff suing upon a claim for money, whether founded on contract, tort, equity or any other theory. . . .

Additionally, Indiana Code section 34-25-2-1 provides that:

(a) At or after the time of filing a complaint, the plaintiff may have an attachment against the property of the defendant, in the cases described in subsection (b) and in the manner described in this chapter.

(b) The plaintiff may attach property when the action is for the recovery of money and the defendant:

(1) is . . . a foreign corporation or a nonresident of Indiana. . . .

■ Our review of the record reveals that Lakes and Rivers complied with the mandates set forth above regarding pretrial attachment in civil actions in that the complaint originally filed by Lakes and Rivers was based on contract principles and was seeking a money judgment for services rendered. Additionally, it is undisputed by the parties that Robinson is a foreign corporation. Indiana law clearly allows pre-trial attachment under these circumstances in order to preserve the status quo pending a decision on the merits of the case. Thus, we find no procedural error pertaining to Lakes and Rivers's pre-trial attachment. However, our inquiry does not end here.

■ Robinson relies upon Indiana Code section 34-25-2-5 for its proposition that "[t]he Order of Attachment obtained by Lakes and Rivers was *wrongful and oppressive* entitling [Robinson] to recover damages as a matter of law because [Robinson's] property was taken causing injury and loss of value, [Robinson] suffered the expense of defending against the taking, and because Lakes and Rivers failed to sustain, even with sufficient evidence to allow the case to go to the trier of fact, any of its claims against [Robinson]." (Appellee's brief at 4.) (Emphasis added.)

■ Indiana Code section 34-25-2-5 states that:

The plaintiff . . . shall execute a written undertaking, with sufficient surety, to be approved by the clerk, payable to the defendant, to the effect that the plaintiff will:

(1) duly prosecute his proceeding in attachment; and,

(2) pay all damages that may be sustained by the defendant, *if the proceedings of the plaintiff are wrongful and oppressive.*

(Emphasis added.) This undertaking is required to protect the attachment-defendant to the extent of damages incurred if the attachment should be determined to be wrongful and oppressive. *Ashland Oil, Inc.,* 496 N.E.2d at 1316.

Robinson urges this Court to accept its proposition that the fact the trial court ruled in favor of Robinson on its motion for partial summary judgment in the underlying action constitutes conclusive proof of Lakes and Rivers's wrongful attachment. In other words, Robinson claims that in any action where an attachment-plaintiff loses its case via summary judgment, the attachment-defendant is entitled to damages as a matter of law, regardless of whether the attachment-plaintiff followed appropriate procedures in obtaining said attachment and despite a preliminary ruling by the trial court, following an evidentiary hearing, that pre-trial attachment

is appropriate. We do not accept this proposition.

 None of the attachment cases we have found specifically deal with a situation as presented here. Moreover, while it is true that this Court has previously stated that caselaw indicates "there is no good faith defense to the recovery on the bond," *see Ashland Oil, Inc.*, 496 N.E.2d at 1317–18, it is the opinion of this Court that a preliminary pre-trial attachment ruling by the trial court, especially when followed with an evidentiary hearing, determines the appropriateness of the attachment, subject to a subsequent suit on the bond. To prevail in the action on the bond or surety, the defendant must show that the attachment was (1) improperly obtained, or (2) wrongful and oppressive under the facts and circumstances which were known or should have been known at the time the attachment request was made. In other words, whether a pre-trial attachment is appropriate should be determined by examining the facts and circumstances at the time the attachment is sought rather than through the use of hindsight as Robinson would have us do today. We agree with Lakes and Rivers that to hold otherwise would abrogate Indiana Trial Rule 64. Moreover, our supreme court has stated that where an act authorized by law gives rise to damages, it is generally *damnum absque injuria. Uppinghouse v. Mundel,* 103 Ind. 238, 2 N.E. 719, 721 (1885).

Lakes and Rivers, pursuant to Indiana Trial Rule 64(B) and Indiana Code section 34–25–2–1, obtained a pre-trial ex-parte attachment against Robinson's property. However, in so doing, our review of the designated materials reveals that Lakes and Rivers failed to fully disclose to the trial court all known facts existing at the time it requested the attachment, thereby preventing the trial court from making a fully informed decision. For example, in its original complaint, Lakes and Rivers alleged that it had provided Robinson with its stevedoring charges and that the rates were "discussed and agreed to between Plaintiff Lakes and Rivers and Defendant Rudolph Robinson...." (R. 25.) Lakes and Rivers, however, failed to disclose to the trial court in its Complaint that it was Orion, the ship owner, who had unilaterally diverted the ship to Burns Harbor and who had agreed to pay the stevedoring services, not Robinson. Lakes and Rivers also failed to disclose in either its Complaint or its Motion to Freeze Assets that Robinson had denied responsibility for payment from the outset of the dispute and had faxed Lakes and Rivers a copy of the agreement between Robinson and Orion, which provided that Orion was to pay Lakes and Rivers the stevedoring charges. Lakes and Rivers also failed to disclose in its Complaint and Motion to Freeze Assets that Orion had repeatedly admitted its liability to Lakes and Rivers and that Lakes and Rivers had attempted to collect its fees solely from Orion for several months until just prior to filing suit against Robinson. Moreover, we previously determined, in Lakes and Rivers's original appeal, that there was no contract between Robinson and Lakes and Rivers regarding payment of the stevedoring services. *See Lakes and Rivers Transfer v. Rudolph Robinson Steel Co.,* 691 N.E.2d 1294 (Ind.Ct.App. 1998).

 The cardinal rule of statutory construction is to determine and give effect to the true intent of the legislature. *T.W. Thom Constr., Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 324 (Ind.Ct.App. 1999). To do this, we interpret a statute according to the ordinary and plain meaning of the language used, absent a clearly manifested purpose to do otherwise. *Id.* Given these rules of statutory construction, we now turn to the pertinent part of Indiana Code section 34–24–2–5(2) which states that "The plaintiff [here, Lakes and Rivers] ... shall pay all damages that may be sustained by the defendant [here, Robinson], if the proceedings of the plaintiff are wrongful *and* oppressive." (Emphasis added.) Black's Law dictionary defines "wrongful" as "injurious, heedless, unjust,

reckless, [or] unfair...." BLACK'S LAW DICTIONARY 1612 (6th ed.1990).[2] In light of the evidence designated by the parties set forth above, we find that Lakes and Rivers wrongfully attached Robinson's property. Lakes and Rivers had the burden of coming forward with all the necessary facts available at the time it requested the extraordinary remedy of pre-trial attachment so that the trial court could make an informed decision. In failing to inform the trial court of all relevant and known facts existing at the time of the attachment request, Lakes and Rivers subjected itself to a possible subsequent finding of wrongful and oppressive attachment and any resulting damages, despite the fact it obtained the pre-trial attachment in accordance with the procedural requirements of Indiana Code section 34–25–2–1.

In light of the foregoing, we conclude that to the extent the trial court ruled that Lakes and Rivers was liable to Robinson for wrongful attachment based solely on the fact that Lakes and Rivers ultimately lost its case through summary judgment, it was error. Furthermore, despite our determination that, under the facts of this case, Lakes and Rivers's pre-trial attachment was nevertheless wrongful, we are constrained to remand this cause to the trial court for further proceedings. The trial court's order granting partial summary judgment in favor of Robinson states that Lakes and Rivers's attachment was wrongful; but, the judgment contains no statement as to whether the attachment was also oppressive. As discussed previously, Lakes and Rivers may not be held liable to pay damages without a finding that the attachment was both wrongful *and* oppressive. We are therefore constrained to remand this cause to the trial court for further proceedings to determine whether Lakes and Rivers's attachment was oppressive.[3]

Accordingly, the trial court's order granting Robinson's request for partial summary judgment regarding the issue of liability on its counterclaim is hereby reversed and this cause is remanded for further proceedings consistent with this opinion.[4]

Reversed and remanded with instructions.

SULLIVAN, J., and VAIDIK, J., concur.

2. Some examples of what might constitute wrongful attachment include (1) cases where the trial court failed to follow the statute, (2) cases where the evidence fails to support the attachment request, and (3) cases where, as here, the attachment-plaintiff fails to fully disclose all necessary evidence for the trial court to make a fully informed decision.

3. In determining whether the attachment in the case at bar was oppressive, we note that there is no one set of circumstances which constitutes an oppressive attachment. Instead, such a determination must be made on a case-by-case basis. Factors the trial court could consider in determining whether a particular pre-trial attachment is oppressive might include: (1) the fungibility of the goods attached, (2) the economic consequences of the attachment, if any, to the viability of the attachment-defendant's ongoing business, (3) the degree of disparity between the value claimed by the attachment-plaintiff and the value of the attached property, and (4) wheth-

er there is evidence of deliberate delay, on the part of the attachment-plaintiff, in an effort to hold the property as "ransom," rather than for the satisfaction of a legitimate debt.

4. We note that Lakes and Rivers has failed to present any argument to this Court regarding the portion of the trial court's partial summary judgment order pertaining to Lakes and Rivers's alleged affirmative defenses of laches, waiver, *res judicata,* and lack of personal jurisdiction. Thus, any error in the entry of that portion of the trial court's partial summary judgment order is waived. *See* Indiana Appellate Rule 8.3(A)(7); *see also Whisman v. Fawcett,* 470 N.E.2d 73 (Ind.1984) (holding that where plaintiff's brief on appeal contained no discussion of a particular issue, any error is deemed waived); *McConnell v. Porter Memorial Hosp.,* 698 N.E.2d 865, 868 (Ind.Ct. App.1998) (holding that consideration of the issues of waiver and estoppel were waived when party failed to present cogent argument on appeal), *trans. denied.*