**LAKES AND RIVERS TRANSFER, A Division of Jack Gray Transport, Inc., Appellant–Plaintiff and Counter Defendant,**

v.

**RUDOLPH ROBINSON STEEL COMPANY, Appellee–Defendant and Counter Plaintiff.**

No. 64A03–0211–CV–405.

Court of Appeals of Indiana.

Sept. 19, 2003.

Steven M. Bush, Millbranth and Bush, Valparaiso, IN, Attorney for Appellant.

Anthony DeBonis, Jr., Smith & DeBonis, LLC, Highland, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Lakes and Rivers Transfer, a Division of Jack Gray Transport, Inc. (Lakes and Rivers) appeals the trial court's judgment awarding Rudolph Robinson Steel Company (Robinson) $119,702.29 in damages on Robinson's counterclaim for wrongful and oppressive pretrial attachment. Lakes and Rivers presents the following restated issues for review:

1. Was the pretrial attachment of steel belonging to Robinson "oppressive" within the meaning of Ind.Code Ann. § 34–25–2–5 and –23 (West 1999)?

2. Was the award of $64,680.41 in attorney fees reasonable?

We affirm.[1]

This case, which has entered its ninth year of litigation, has been before this court on two previous occasions. *See Lakes and Rivers Transfer, a Div. Of Jack Gray Transport, Inc. v. Rudolph Robinson Steel Co.,* 691 N.E.2d 1294 (Ind.Ct.App. 1998) (*Lakes and Rivers I*) and *Lakes and Rivers Transfer, a Div. Of Jack Gray v. Rudolph Robinson Steel Co.,* 736 N.E.2d 285 (Ind.Ct.App.2000) (*Lakes and Rivers II*). The following facts are gleaned from those two opinions.

On October 24, 1994, Robinson entered into an agreement with Orion Maritime, Inc. (Orion) to ship imported steel to the United States for sale to Robinson's customers in the Midwest. The steel was to be shipped on the *M/V Pauline Olivieri,* a ship owned and operated by Orion. The ship's cargo was to be unloaded at Detroit and Chicago. The ship first docked at Detroit, where only a portion of the steel bound for Detroit was unloaded. Orion,

on its own initiative, diverted the ship to Burns Harbor, Indiana, which was not one of the scheduled ports. The Chicago cargo, along with the remainder of the Detroit cargo, was unloaded there (totaling approximately 12,000 tons). The cargo was discharged beginning on December 20, 1994, and it was fully unloaded by the morning of December 23, 1994.

Orion's diversion of the ship caused Robinson to incur unexpected additional costs for shipping the steel unloaded at Burns Harbor to its customers, so Orion agreed to arrange for and pay for the stevedoring services associated with the discharge of the ship's cargo at Burns Harbor. Shortly before the ship arrived, a local agent for Orion called a representative of Lakes and Rivers, indicating that the ship would be arriving and explaining that it needed to be unloaded quickly because the St. Lawrence Seaway would be closing shortly.

The day before the ship arrived, Lakes and Rivers sent a fax inquiry asking Robinson who would be responsible for the stevedoring charges. A week after the ship was unloaded, Lakes and Rivers once again asked Robinson who would be responsible for the stevedoring charges. Robinson responded the same day that Orion would be responsible, and it faxed to Lakes and Rivers a copy of its agreement with Orion to that effect.

From that date through April 1995, Lakes and Rivers repeatedly attempted to collect the charges for its stevedoring services (in excess of $140,000.00) from Orion, and Orion repeatedly acknowledged its liability. Lakes and Rivers did not invoice Robinson or otherwise attempt to collect

---

1. We remind Lakes and Rivers's counsel that Ind. Appellate Rule 46(A)(10) requires the appellant's brief to include "any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal." Counsel's failure in this regard has hindered our consideration of both of the issues presented for review.

from Robinson during that time. After it failed to collect from Orion, however, Lakes and Rivers made a demand on April 21, 1995 for payment from Robinson.

Thereafter, in May 1995, Lakes and Rivers filed a complaint against Robinson seeking to recover the value of stevedoring services it had allegedly rendered to Robinson, a foreign corporation. Additionally, in accordance with Ind. Trial Rule 64(B), Lakes and Rivers requested and obtained a pretrial order attaching a quantity of Robinson's steel that remained at Burns Harbor in Lakes and Rivers's possession until final resolution of the merits of the underlying action. Robinson quickly challenged the ex-parte attachment order. In June, a hearing was held on Robinson's Motion to Dissolve Order Freezing Assets, after which the trial court denied said motion, leaving the attachment order in effect.

Some time later, both parties filed motions for summary judgment on the underlying claim. The trial court granted Robinson's motion for summary judgment and denied Lakes and Rivers's motion in an order dated January 29, 1997. Lakes and Rivers appealed the trial court's decision. In *Lakes and Rivers I*, decided on February 26, 1998, this court made relatively short shrift of Lakes and Rivers's arguments on appeal, concluding that summary judgment was properly granted because "Robinson had no express or implied contractual obligation to pay Lakes and Rivers for services which Orion requested and had agreed with Robinson to pay for, and Robinson was not estopped from denying that it had such a contractual obligation." *Lakes and Rivers I*, 691 N.E.2d at 1297. Lakes and Rivers did not seek transfer to the supreme court.

Thereafter, on July 8, 1998, after obtaining leave from the trial court, Robinson filed its counterclaim alleging that the pretrial attachment by Lakes and Rivers was wrongful and oppressive and seeking damages. Robinson subsequently filed a motion for partial summary judgment, which was limited to the issues of liability and the affirmative defenses raised by Lakes and Rivers. Following a hearing, the trial court granted partial summary judgment in favor of Robinson, finding that there was no genuine issue of material fact regarding Lakes and Rivers's liability and that Robinson was entitled to judgment on its counterclaim for wrongful attachment as a matter of law. The amount of damages was then to be determined at trial.

Lakes and Rivers appealed the trial court's order and raised one issue for review: "Whether an attachment-defendant (here Robinson) in a civil action is entitled to recover damages for wrongful and oppressive attachment, as a matter of law, when it prevails via summary judgment in the underlying action." *Lakes and Rivers II*, 736 N.E.2d at 288 (issue restated by the court). After sua sponte determining that the trial court had subject matter jurisdiction over Robinson's counterclaim, this court addressed Lakes and Rivers's argument that the trial court erroneously granted Robinson's motion for partial summary judgment. Because of its relevance to the current appeal, we set forth below much of *Lakes and Rivers II's* analysis in this regard:

> To prevail in the action on the bond or surety, the defendant must show that the attachment was (1) improperly obtained, or (2) wrongful and oppressive under the facts and circumstances which were known or should have been known at the time the attachment request was made. In other words, whether a pretrial attachment is appropriate should be determined by examining the facts and circumstances at the time the attachment is sought rather than through the

use of hindsight as Robinson would have us do today....

Lakes and Rivers, pursuant to Indiana Trial Rule 64(B) and Indiana Code section 34–25–2–1, obtained a pretrial ex-parte attachment against Robinson's property. However, in so doing, our review of the designated materials reveals that Lakes and Rivers failed to fully disclose to the trial court all known facts existing at the time it requested the attachment, thereby preventing the trial court from making a fully informed decision. For example, in its original complaint, Lakes and Rivers alleged that it had provided Robinson with its stevedoring charges and that the rates were "discussed and agreed to between Plaintiff Lakes and Rivers and Defendant Rudolph Robinson...." Lakes and Rivers, however, failed to disclose to the trial court in its Complaint that it was Orion, the ship owner, who had unilaterally diverted the ship to Burns Harbor and who had agreed to pay the stevedoring services, not Robinson. Lakes and Rivers also failed to disclose in either its Complaint or its Motion to Freeze Assets that Robinson had denied responsibility for payment from the outset of the dispute and had faxed Lakes and Rivers a copy of the agreement between Robinson and Orion, which provided that Orion was to pay Lakes and Rivers the stevedoring charges. Lakes and Rivers also failed to disclose in its Complaint and Motion to Freeze Assets that Orion had repeatedly admitted its liability to Lakes and Rivers and that Lakes and Rivers had attempted to collect its fees solely from Orion for several months until just prior to filing suit against Rob-

inson. Moreover, we previously determined, in Lakes and Rivers's original appeal, that there was no contract between Robinson and Lakes and Rivers regarding payment of the stevedoring services.

The cardinal rule of statutory construction is to determine and give effect to the true intent of the legislature. To do this, we interpret a statute according to the ordinary and plain meaning of the language used, absent a clearly manifested purpose to do otherwise. Given these rules of statutory construction, we now turn to the pertinent part of Indiana Code section 34–25–2–5(2) which states that "The plaintiff [here, Lakes and Rivers] ... shall pay all damages that may be sustained by the defendant [here, Robinson], if the proceedings of the plaintiff are wrongful *and* oppressive." (Emphasis added.) Black's Law dictionary defines "wrongful" as "injurious, heedless, unjust, reckless, [or] unfair...." BLACK'S LAW DICTIONARY 1612 (6th ed.1990).[2] In light of the evidence designated by the parties set forth above, we find that Lakes and Rivers wrongfully attached Robinson's property. Lakes and Rivers had the burden of coming forward with all the necessary facts available at the time it requested the extraordinary remedy of pre-trial attachment so that the trial court could make an informed decision. In failing to inform the trial court of all relevant and known facts existing at the time of the attachment request, Lakes and Rivers subjected itself to a possible subsequent finding of wrongful and oppressive attachment and any resulting

**2.** Footnote 2 of the opinion explained: "Some examples of what might constitute wrongful attachment include (1) cases where the trial court failed to follow the statute, (2) cases where the evidence fails to support the attach-

ment request, and (3) cases where, as here, the attachment-plaintiff fails to fully disclose all necessary evidence for the trial court to make a fully informed decision." *Lakes and Rivers II,* 736 N.E.2d at 294 n. 2.

damages, despite the fact it obtained the pre-trial attachment in accordance with the procedural requirements of Indiana Code section 34–25–2–1.

In light of the foregoing, we conclude that to the extent the trial court ruled that Lakes and Rivers was liable to Robinson for wrongful attachment based solely on the fact that Lakes and Rivers ultimately lost its case through summary judgment, it was error. Furthermore, despite our determination that, under the facts of this case, Lakes and Rivers's pre-trial attachment was nevertheless wrongful, we are constrained to remand this cause to the trial court for further proceedings. The trial court's order granting partial summary judgment in favor of Robinson states that Lakes and Rivers's attachment was wrongful; but, the judgment contains no statement as to whether the attachment was also oppressive. As discussed previously, Lakes and Rivers may not be held liable to pay damages without a finding that the attachment was both wrongful and oppressive. We are therefore constrained to remand this cause to the trial court for further proceedings to determine whether Lakes and Rivers's attachment was oppressive.

*Lakes and Rivers II,* 736 N.E.2d at 293–94 (some citations omitted). In a footnote, this court provided the trial court with guidance on remand:

> In determining whether the attachment in the case at bar was oppressive, we note that there is no one set of circumstances which constitutes an oppressive attachment. Instead, such a determination must be made on a case-by-case basis. Factors the trial court *could* consider in determining whether a particular pre-trial attachment is oppressive *might* include: (1) the fungibility of the goods attached, (2) the economic conse-

quences of the attachment, if any, to the viability of the attachment-defendant's ongoing business, (3) the degree of disparity between the value claimed by the attachment-plaintiff and the value of the attached property, and (4) whether there is evidence of deliberate delay, on the part of the attachment-plaintiff, in an effort to hold the property as "ransom," rather than for the satisfaction of a legitimate debt.

*Id.* at 294 n. 3 (emphases supplied).

Following remand, on October 23, 2001, a bench trial was held to determine whether the attachment was oppressive and, if so, what damages Robinson had suffered as a result of the wrongful and oppressive attachment. The parties filed proposed findings of fact and conclusions of law on April 15, 2002. Thereafter, on October 29, 2002, the trial court entered its order and judgment finding that the attachment was oppressive and awarding Robinson damages in the amount of $119,702.29, which sum included attorney fees of $64,680.41. Lakes and Rivers appeals from this order.

■■■ In entering its order, the trial court set forth extensive findings of fact and conclusions of law.

> When findings of fact and conclusions of law are entered by the trial court, as occurred here, we will not set aside the judgment unless it is clearly erroneous; that is, unless we are definitely and firmly convinced the trial court committed error. The findings must disclose a valid basis for the legal result reached in the judgment, and evidence at trial must support each of the specific findings. We defer to the trial court when such evidence conflicts. We will not reweigh the evidence nor reassess the credibility of the witnesses before the court. Rather, we will affirm if there is sufficient evidence of probative value to support the decision, viewing the evidence most

favorable to the judgment and the reasonable inferences drawn therefrom. To the extent that the judgment is based on erroneous findings, those findings are superfluous and are not fatal to the judgment if the remaining valid findings and conclusions support the judgment.

Conclusions of law, however, are reviewed de novo. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind.2002), *reh'g denied.*

> A "clearly erroneous" judgment can result from application of the wrong legal standard to properly-found facts, and in that situation we do not defer to the trial court. We are not bound by the trial court's characterization of its results as "findings of fact" or "conclusions of law." Rather, we look past these labels to the substance of the judgment and will review a legal conclusion as such even if the judgment wrongly classifies it as a finding of fact.

*Id.* (quoting *State v. Van Cleave*, 674 N.E.2d 1293, 1296 (Ind.1996)).

*AmRhein v. Eden*, 779 N.E.2d 1197, 1206 (Ind.Ct.App.2002) (some citations omitted).

### 1.

██ Lakes and Rivers argues that the attachment of Robinson's steel was not oppressive within the parameters set forth by the court in *Lakes and Rivers II*. We observe, however, that Lakes and Rivers does not directly challenge any of the trial court's findings of fact. Moreover, in applying the four factors suggested in *Lakes and Rivers II*, we note that Lakes and Rivers directs us to evidence that is not favorable to the judgment and, in at least one regard, mischaracterizes the evidence.[3] We reject Lakes and Rivers's invitation to reweigh the evidence.

The trial court's findings and the evidence in the record reveal that Lakes and Rivers made its first demand for payment from Robinson on April 21, 1995, after unsuccessfully attempting to obtain payment from Orion for several months. Robinson maintained that it had no obligation to pay for the stevedoring charges and, in fact, Orion had previously admitted liability for these charges. Lakes and Rivers, nevertheless, filed suit against Robinson and obtained a pretrial order of attachment of Robinson's steel still located at Burns Harbor on May 22, 1995. The wrongful attachment remained in place until January 1997, and Lakes and Rivers finally permitted Robinson to ship its steel from Burns Harbor in late July or early August of that year. Within a matter of days, Robinson had contracted for a trucking company to move the steel to a public warehouse in Detroit where the steel was weighed, inspected, and eventually sold.

At the time of the attachment, approximately 300 tons of the 12,000 tons of steel

---

**3.** For example, with regard to the value of the steel attached, Lakes and Rivers notes the testimony of one of its witnesses that "the remaining steel was essentially scrap" and "Russian steel, as was involved here, is probably the lowest grade of import." *Appellant's Brief* at 15. We initially observe that Lakes and Rivers does not make it clear that the witness was referring to the steel's value as "scrap" at the time the attachment was lifted in 1997, rather than the steel's value in 1995 when it was in prime condition. Moreover, we note that there was conflicting evidence presented regarding the quality and marketability of Russian steel.

We are particularly concerned with Lakes and Rivers's assertion throughout its appellate brief that it released steel to Robinson's customers as Robinson sold steel after the attachment. Lakes and Rivers's citations to the transcript do not support such a factual assertion. Furthermore, we find no evidence in the record that Robinson took an unwise business step and continued to sell the remaining steel during the attachment.

deposited at Burns Harbor remained in Lakes and Rivers's possession. Most of the 300 tons was speculative (i.e., it had not yet been sold by Robinson). A quantity of this steel, however, had been sold before attachment but not yet picked up by Robinson's customers. The purchasers, not Robinson, owned this steel. Some of these purchasers had difficulty obtaining their steel from Burns Harbor after the attachment and were informed that Robinson had not paid its bills. Lakes and Rivers finally released the presold steel to Robinson's customers after Robinson "complained through legal channels." *Transcript* at 101. This situation resulted in injury to Robinson's good will and "created great embarrassment" to Robinson. *Id.* at 45.

. Upon delivery of the steel at Burns Harbor in December 1994, the steel was prime. It was blue in appearance and had no physical damage and no rust. The steel's condition significantly deteriorated during the two-year period of attachment due in part to Lakes and Rivers's failure to properly store the steel as directed. In particular, the hot rolled steel sheets had not been tarped and protected from the elements as promised and had a fair amount of physical damage, including very heavy rust and surface pitting. Robinson sold the damaged steel in 1997 to five purchasers at considerably reduced prices compared to sales in 1995 from the same shipment of steel. In sum, Robinson lost $45,814.59 in sales profit. While the steel market had declined since 1995, the primary cause of Robinson's lost profit was the deteriorated condition of the steel.

In sum, Lakes and Rivers obtained the attachment through wrongful means and then, in essence, held Robinson's property

ransom for satisfaction of a debt known to be owed by another party. Lakes and Rivers even took steps to injure the small business's good will by making it difficult for Robinson's customers to obtain their previously purchased steel and by informing the customers that Robinson had not paid its bills to Lakes and Rivers. Moreover, while retaining the steel for over two years, Lakes and Rivers failed to properly care for it, resulting in significant deterioration.

The impact of attachment on Robinson's small family business [4] was severe. In addition to the injury to its good will, the business suffered considerable direct financial harm in the form of lost sales and mounting attorney fees. These loses would have represented a substantial portion of Robinson's earnings at the time.

In light of the above facts, we cannot say that the trial court's judgment is clearly erroneous. The trial court could reasonably conclude that Lakes and Rivers exacted an excessive burden on Robinson through its wrongfully obtained pretrial attachment. *See Black's Law Dictionary* 1093 (6th ed.1990) (defining "oppression" as "[a]n act of . . . severity, unlawful exaction, or excessive use of authority . . . [a]n act of subjecting to cruel and unjust hardship; an act of domination"); *Merriam–Webster Dictionary,* available at http://www.m-w.com/cgi-bin/dictionary (last visited August 19, 2003) (defining "oppressive" as "unreasonably burdensome or severe"). As the trial court found in its order, the attachment "had a significantly burdensome and negative impact on this small business" and "was undertaken months after the original transaction and only in a desperate last-ditch attempt to obtain pay-

---

4. The record reveals that in 1995 Robinson had nine or ten employees and, at the time of trial, had only three employees.

ment from somebody, anybody." *Appellant's Appendix* at 58. The trial court did not err in determining that the attachment was oppressive based on the facts and circumstances of this case.

2.

Lakes and Rivers also challenges the amount of attorney fees awarded by the trial court. Lakes and Rivers phrases the issue as follows:

> Was the judgment of the Court in awarding attorney fees of $64,680.41 reasonable when the amount of damages found by the Court for Rudolph Robinson was $55,021.88 and a portion of the fees were incurred in the original defense of the cause, and in the second appeal, which resulted in a reversal and remand for further consideration and findings, and for the trial which resulted from the reversal?

*Appellant's Brief* at 1.

██ Pursuant to I.C. § 34–25–2–23, damages may be recovered by an aggrieved party for an attachment that is wrongful and oppressive. "[T]he damages available consist of two elements: damages for expenses incurred in defending against the attachment proceeding and damages for injury to or loss of the property once it is seized." *Ashland Oil, Inc. v. Arnett,* 496 N.E.2d 1313, 1320 (Ind.Ct.App.1986), *aff'd in relevant part,* 507 N.E.2d 561 (Ind. 1987). Thus, as Lakes and Rivers concedes, attorney fees are properly included as part of the damages for defending against the attachment proceeding.

██ Lakes and Rivers argues that Robinson is not entitled to recover attorney fees related to the appeal in *Lakes and Rivers II* or the trial following remand. Lakes and Rivers's entire argument in this regard follows:

> Here, attorney fees incurred by James Mercante and Smith and DeBonis have been included nearly in their entirety. (Appellant's App. P. 111–151, 152–201).

Those fees include defense of the underlying cause, and the appellate work done regarding the appeal in L & R II. Lakes and Rivers was successful in getting a reversal and remand in L & R II. In *D.S.I. v. Natare Corporation,* 742 N.E.2d 15, 28 (Ind.App.2000), the court said: "... we will not impose such sanctions (award of damages, including attorney fees) to punish lack of merit unless the appellant's contentions and argument are utterly devoid of plausibility." "An appeal of an award of trial fees and costs does not automatically give rise to an award of appellate attorney fees." *Greasel v. Troy,* 690 N.E.2d 298, 304 (Ind.App.1997). In L & R II, Lakes and Rivers obviously had legitimate arguments since the matter was reversed. Under the above authority, no attorney fees should have been awarded in the trial court's judgment for fees and costs associated with that appeal.

Similarly, the fees and costs associated with the trial of this cause on the remand should not be assessed against Lakes and Rivers. Even though the Court of Appeals found the attachment to be wrongful (L & R II, p. 294) Rudolph Robinson failed in its burden of showing the attachment to be both wrongful and oppressive. Ind.Code § 34–25–2–23. In *D.S.I., Supra* [sic], the Court said, "We must use extreme restraint when exercising our discretionary power to award damages on appeal, however, because of the potential chilling effect upon the exercise of the right to appeal." at [sic] page 28. Even though the trial court, in essence, awarded damages in the form of attorney fees for the appeal in L & R II, if the Court of Appeals affirms that award, it is then exercising its discretion in awarding damages. Likewise, if Lakes and Rivers is assessed damages in the form of attorney fees for Smith and

DeBonis for the trial on remand, then. Lakes and Rivers is essentially being punished for exercising its right to appeal, and to having prosecuted that appeal successfully, when that trial came as a result of Rudolph Robinson failing to sustain its burden of showing the attachment was wrongful and oppressive.

Based on the above, the award of attorney fees for the appeal in L & R II, and for any fees associated with the trial upon the remand would seem to constitute an abuse of discretion on the part of the trial court and should be reversed.

*Appellant's Brief* at 18–19.

The logic of Lakes and Rivers's argument is unsound, as the authority upon which it relies is wholly inapposite to the instant case. The two cases cited by Lakes and Rivers address a party's request to the appellate court for an award of damages in the form of appellate attorney fees pursuant to former Ind. Appellate Rule 15(G) (now App. R. 66(E)). An award of damages (which may include appellate attorney fees) under this rule is discretionary and may be ordered when the appeal is frivolous or in bad faith. *See* App. R. 66(E); *D.S.I. v. Natare Corp.*, 742 N.E.2d 15 (Ind.Ct.App.2000), *trans. denied.* It is true that we use extreme restraint when exercising our discretionary power to award damages under this rule, and "we will not impose such sanctions to punish lack of merit unless the appellant's contentions and argument are utterly devoid of all plausibility." *D.S.I. v. Natare Corp.*, 742 N.E.2d at 28; *see also Greasel v. Troy*, 690 N.E.2d 298 (Ind.Ct.App.1997).

While it is evident that Lakes and River's appeal in *Lakes and Rivers II* was not frivolous or in bad faith, we observe that no damages have been awarded or even requested based upon this rule. Rather, the trial court awarded the challenged attorney fees as part of Robinson's damages resulting from the wrongful and oppressive attachment, pursuant to I.C. § 34–25–2–23. We further observe that simply because appellate attorney fees may not be appropriately awarded by this court under our appellate rules, a trial court is not precluded from awarding reasonable fees for an appeal based upon another statute, rule, or agreement allowing for such an award. *See Greasel v. Troy*, 690 N.E.2d at 304 n. 2 (declining to award appellate attorney fees under App. R. 15(G), but noting that "decision does not preclude [landlord] from petitioning the trial court to amend its judgment to include a reasonable fee for the appeal" where lease agreement required tenant to pay landlord's attorney fees). Therefore, Lakes and Rivers has failed to establish error with regard to the trial court's award of attorney fees.

Judgment affirmed.

ROBB, J., and VAIDIK, J., concur.