**FILED**

Dec 21 2016, 6:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



| | |
|---|---|
| ATTORNEY FOR APPELLEES | ATTORNEY FOR APPELLANTS |
| Kenneth J. Munson | Christopher J. McElwee |
| Hoover Hull Turner LLP | Monday Jones & Albright |
| Indianapolis, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shelby's Landing – II, Inc., Richard Deckard, Jr., Marilyn Deckard, and Deckard Realty & Development Co., | December 21, 2016 |
| *Appellants-Defendants,* | Court of Appeals Case No. 73A01-1509-CC-1403 |
| v. | Appeal from the Shelby Superior Court |
| PNC Multifamily Capital Institutional Fund XXVI Limited Partnership, Columbia Housing SLP Corporation and Shelby's Landing II – L.P., | The Honorable Charles D. O'Connor, Special Judge |
| *Appellees-Plaintiffs.* | Trial Court Cause No. 73D01-1108-CC-259 |

**Pyle, Judge.**

## Statement of the Case

Appellants-Defendants, Shelby's Landing-II, Inc. ("Shelby's Landing"); Richard Deckard, Jr. ("Richard"); Marilyn Deckard ("Marilyn"); and Deckard Realty & Development Co. ("Deckard Realty") (collectively, "the Defendants"), appeal the trial court's judgment in favor of Appellees-Plaintiffs, PNC Multifamily Capital Institutional Fund XXVI Limited Partnership ("PNC Multifamily"); Columbia Housing SLP Corporation ("Columbia"); and Shelby's Landing II-L.P. ("the Partnership") (collectively, "the Plaintiffs"), in their breach of contract claim. The Defendants argue that it was error for the trial court to find that they had misappropriated the Partnership's funds and committed theft because the Plaintiffs did not raise misappropriation or theft claims in their complaint. They also argue that the trial court abused its discretion by awarding the Plaintiffs an unreasonable amount of attorney fees.

We conclude that, regardless of the trial court's misappropriation and theft findings and conclusions, there were adequate uncontested findings and conclusions to support the trial court's judgment. Because we also conclude that the trial court awarded the Plaintiffs a reasonable amount for their attorney fees, we affirm the trial court's judgment.

We affirm.

## Issues

1. Whether the trial court erred when it entered findings that the Defendants had committed misappropriation and theft.

2. Whether the trial court abused its discretion in determining the amount of attorney fees to award the Plaintiffs.

## Facts

[4] In April 2005, Shelby's Landing, Deckard Realty, Columbia, and PNC Multifamily entered into a limited partnership agreement ("Partnership Agreement"), forming the Partnership. The purpose of the Partnership was to "construct, rehabilitate, acquire, own, maintain, manage, lease, sell, mortgage, or otherwise dispose" of property in Shelbyville, Indiana, in order to profit from a tax credit system designed to encourage private investment in low-income housing developments. (App. 220). The Partnership Agreement named Shelby's Landing as the General Partner of the Partnership; PNC Multifamily and Columbia as the Limited Partners (collectively, "the Limited Partners") of the Partnership; and Deckard Realty as the developer of the Partnership. The President of Shelby's Landing, Richard, was also the President of Deckard Realty.

[5] Pursuant to the Partnership Agreement, Shelby's Landing's duties as General Partner included, in relevant part: (1) managing the Partnership's business; (2) keeping and maintaining the Partnership's accounting records; (3) advancing all funds necessary to meet operating deficits; (4) maintaining tenant security deposits in separate accounts; and (5) making an immediate capital contribution to fund any necessary credit adjustment amounts. It was also prohibited from, without the consent of the Limited Partners, borrowing from the Partnership;

commingling partnership funds with the funds of any other person; or causing the Partnership to make any loan or advance to any other person.

[6] The same day that the partners executed the Partnership Agreement, Deckard Realty, Richard, and Marilyn (collectively, "the Guarantors") executed a guaranty agreement ("Guaranty Agreement"). In the Guaranty Agreement, the Guarantors guaranteed:

> to the Partnership and the Limited Partners the full and prompt payment, performance, observance, compliance, and satisfaction of all obligations, covenants, representations, and warranties on the part of the General Partner to be paid, performed, observed, complied with, or satisfied with respect to the [Partnership] Agreement.

(App. 305). The terms of the Guaranty Agreement also provided that:

> . . . Upon any default by the Partnership or the General Partner or the Developer or Other Obligors relating to any obligation under the [Partnership] Agreement, the Limited Partners may, at either of their option, proceed directly and at once against the Guarantor[s] to collect the full amount of the Guarantor[s'] liability hereunder, or any portion thereof, without first proceeding against the Partnership, the General Partner, the Developer, any Other Obligors, or any person, corporation, partnership, or other entity.

(App. 306).

[7] Subsequently, due to delays in the development of the Shelbyville property, the partners executed an amendment to the Partnership Agreement ("Adjuster Note") recognizing that the Partnership, Shelby's Landing, and the Guarantors owed the Limited Partners an adjusted amount of $950,000 plus interest

("Adjuster Amount"), to be paid in installments.[1]  Shelby's Landing, Richard, and Marilyn guaranteed the Adjuster Note as Guarantors.

[8]  Three years later, on or about November 10, 2010, the Limited Partners sent Shelby's Landing a written notice that it was in default under the Partnership Agreement.  Specifically, they alleged that Shelby's Landing had:  (1) failed to take all actions necessary to maintain and operate the Shelbyville property; (2) defaulted under the construction loan for the property; (3) defaulted in repaying the Adjuster Note; and (4) made loans or advances to itself or other affiliates without the consent of the Limited Partners.  The Limited Partners demanded that Shelby's Landing cure its default by November 16, 2010, or face removal from its status as General Partner.

[9]  Shelby's Landing did not cure its alleged breaches of the Partnership Agreement, and the Limited Partners sent it another written notice of default on June 22, 2011.  In this second notice, the Limited Partners again requested that Shelby's Landing cure the breaches they had identified in their November 10 notice of default.  They also alleged that Shelby's Landing had committed additional breaches of contract since November 10, including failing to provide the Limited Partners with federal and state tax returns and audited Partnership financial statements.  The Limited Partners demanded that Shelby's Landing cure all of the alleged defaults by July 5, 2011, or be subject to removal from

---

[1] This amount was distinct from any monetary liabilities under the Partnership Agreement.

being General Partner. They also stated that they were sending the notice to the Guarantors pursuant to the terms of the Guaranty Agreement, "to demand that Guarantor[s] immediately cure or cause to be cured the defaults of [Shelby's Landing]." (App. 171).

[10] Shelby's Landing again failed to cure its defaults. Accordingly, on August 17, 2011, the Limited Partners and the Partnership sent Shelby's Landing a notice of its removal as General Partner. Five days later, on August 22, 2011, the Plaintiffs—the Limited Partners and the Partnership—filed a complaint against the Defendants—Shelby's Landing and the Guarantors. In their complaint, the Plaintiffs raised breach of contract and breach of guaranty claims. In addition to declaratory and other forms of relief, the Plaintiffs also requested recovery of their attorney fees.

[11] On September 7, 2012, the Plaintiffs filed a motion for partial summary judgment requesting, among other judgments, a declaration that Shelby's Landing had been properly removed as General Partner and a judgment against Shelby's Landing and the Guarantors for the amounts due under the Adjuster Note. The trial court granted the motion for a partial summary judgment on July 19, 2013, and held a trial to determine the remaining issues of liability and damages on January 26, 2015.

[12] At trial, the parties presented evidence of liability and damages, and the Plaintiffs attempted to admit two affidavits from their attorneys and invoices documenting the attorneys' fees. The Defendants objected to the admission of

the affidavits and invoices on grounds of hearsay, but the trial court conditionally admitted them, pending post-hearing argument from the parties.

[13] As a result of other evidence admitted at the January 26 trial, the trial court entered the following findings of fact and conclusions of law:

Findings of Fact

\* \* \*

29) [Shelby's Landing], as the General Partner through August 17, 2011, was responsible for the day-to-day management of the [Partnership], and, as such, was and is responsible to the [P]artnership for the misuse of partnership funds.

30) As Guarantors, [Richard] and [Marilyn] and Deckard Realty are jointly and severally responsible for the General Partner's obligations to the Partnership for any misuse of partnership funds.

\* \* \*

33) The sum of $1,596,290.46 was paid with checks written to or for the benefit of Affiliates of the General Partner, as that term is defined on page 3 of the Partnership Agreement.

\* \* \*

35) The 2005 Partnership Agreement provides in section 6.3 that without the express written consent of PNC Multifamily, the General Partner was prohibited from transferring any asset of the Partnership, borrowing or comingling funds of the Partnership[,] and causing the Partnership to make any loan or advance to the General Partner o[r] its Affiliates.

36) After the General Partner's removal, [Richard] admitted that he comingled Partnership funds with the funds of Deckard Realty

and that PNC Multifamily never provided written consent to any comingling of Partnership funds.

37) [Richard] further also admitted that he transferred Partnership assets and made loans or advances of Partnership funds to Affiliates, and he further admitted that PNC Multifamily never provided written consent to any transfers, loans or advances to Affiliates.

* * *

45) Considering the totality of the evidence, the Court finds [the] Defendants' acts of misappropriation to be intentional and willful.

* * *

87) The [D]efendant[]s elicited testimony that perhaps some payments to the Defendants and the General Partner's affiliates could have been made to reimburse actual partnership expenses. However, the Defendants failed to otherwise provide any evidence that any payment actually was for a reimbursable Partnership expense.

88) Moreover, the evidence was clear that at no time did the General Partner ever obtain consent from the PNC Multifamily to pay an affiliate, even if the payment was to be considered an ordinary course receivable under section 6.3(n) of the 2005 Partnership Agreement.

89) Accordingly, none of the $1,596,290.46 paid to the Deckard Affiliates was proper and therefore both the General Partner and the remaining Defendant Guarantors are liable for the improper payments made to those affiliates between 2006 through August of 2011.

Conclusions of Law

* * *

> B. The Defendants individually and as [G]uarantors breached their duties to the Plaintiffs under the Partnership [A]greement.

*       *       *

98) The General Partner breached its contractual and fiduciary obligations under the Partnership Agreement: not to transfer assets of the Partnership, not to comingle Partnership funds, and not to loan or advance Partnership funds to affiliates.

99) The Plaintiffs incurred damages as a result of the General Partner's breaches of its contractual and fiduciary obligations under the Partnership Agreement.

100) The Defendants are jointly and severally obligated under the Agreement of Guaranty to each of the Plaintiffs for the General Partner's breaches of the Partnership Agreement.

101) The Defendants are jointly and severally obligated under the Agreement of Guaranty to each of the Plaintiffs for the General Partner's misappropriation of Partnership funds as detained [sic] herein.

102) The Defendants, individually and as [G]uarantors, breached their duties to the Plaintiffs under the Adjuster [] Note.

*       *       *

110) The [D]efendants are jointly and severally liable to PNC Multifamily on the Adjuster Note through January 27, 2015 in the total amount of $1,140,428.87, plus interest in the amount of $82.08 per day thereafter through final judgment, plus post-judgment interest on the total amount outstanding (principal plus interest) as of the date of final judgment at the prime rate public[ly] announced by PNC Bank, National Association based until satisfaction of the judgment.

111) A criminal conviction for theft is not a condition precedent to recovery in a civil action for theft. A claimant must merely

prove commission of the crime by a preponderance of the evidence. Under [IND. CODE] § 35-43-4-2(a), "a person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony."

112) [Richard] knowingly and intentionally exerted unauthorized control over the Partnership's funds, with the intent to deprive the Partnership of its funds.

113) The General Partner was responsible [for] manag[ing] the Partnership funds and breached its obligations to the Plaintiffs to prevent the misappropriation of the Partnership's funds.

114) The Defendants participated in [Richard's] misappropriation of Partnership finds and are jointly and severally liable as a result of their participation in the misappropriations and as a result of their guaranty of the General Partner's obligations to the Plaintiffs.

115) The Defendants breached their obligations to the Plaintiffs.

116) The Plaintiffs were harmed and damaged by the Defendant[s'] breaches.

117) The Plaintiffs were damaged in the amount of $1,596,290.46.

118) The Defendants are jointly and severally liable to the Plaintiffs in the amount of $1,596,290.46 improperly paid to and misappropriated by the Defendants and their affiliates.

119) Attorney fees incurred to enforce the terms of the Adjuster Note are recoverable under paragraph 6 of the Note.

120) Attorney fees incurred by Plaintiffs to enforce the obligation of Defendant Guarantors pursuant to the Agreement of Guaranty and the Partnership Agreement are recoverable under paragraph 8 of the Agreement of Guaranty.

121) Defendants agreed to the attorney fee provisions in the Adjuster Note and Guaranty Agreement.

(App. 26-38) (internal citations omitted). The trial court then entered judgment in favor of the Plaintiffs in the amount of $1,140,428.87 plus interest for the Defendants' breach of the Adjuster Note and $1,596,290.46 for the Defendants' breach of the Partnership Agreement.

[14] On May 27, 2015, the Defendants filed a motion to correct error arguing that the trial court had erred in its Findings and Conclusions Numbers 45, 98, 111, and 112 because the Plaintiffs had not pled claims of theft or breach of fiduciary duty.[2] The trial court held a hearing on the Defendants' motion, as well as the Plaintiffs' unresolved attorney fee request, on July 22, 2015.

[15] At the hearing, the parties discussed the attorney fee request and the motion to correct error. With respect to attorney fees, the Plaintiffs argued that the trial court should admit the affidavits and invoices of the Plaintiffs' attorney fees that the court had conditionally admitted at trial. They also introduced supplemental affidavits from the lead counsel for their law firms, establishing that the conditional exhibits in question were admissible as certified business records. The trial court showed the affidavits as filed on that day.

---

[2] While the Defendants cited the trial court's Finding Number 45, which referred to misappropriation, they did not specifically challenge the trial court's reference to misappropriation in their motion to correct error. They solely argue that the trial court erred by finding that they had committed theft and had breached their fiduciary duty.

[16] Thereafter, on August 12, 2015, the trial court issued an order partially granting the Defendants' motion to correct error. It amended its Finding Number 45, which had originally provided: "Considering the totality of the evidence, the Court finds [] Defendants' acts of misappropriation to be intentional and willful." (App. 33). The amended finding instead provided that: "Considering the totality of the evidence, the Court finds [Richard] and [Shelby's Landing] committed acts of misappropriation." (App. 43). It also amended its Conclusion Number 114, which had originally provided: "The Defendants participated in [Richard's] misappropriation of Partnership funds and are jointly and severally liable as a result of their participation in the misappropriations and as a result of their guaranty of the General Partner's obligations to the Plaintiffs." (App. 38). The amended version of Conclusion Number 114 provided that: "Defendants are jointly and severally liable as a result of their guaranty of the General Partner's obligations to the Plaintiffs." (App. 44). The trial court then denied the Defendants' motion with respect to its Findings and Conclusions Numbers 98, 110, and 112. The trial court also determined that the Plaintiffs' requested attorney fees of $385,125.26 were reasonable and awarded them recovery of those fees.

[17] The Defendants now appeal the trial court's partial denial of their motion to correct error and its award of attorney fees.

# Decision

[18] On appeal, the Defendants argue that: (1) the trial court's findings and conclusions regarding misappropriation and theft were erroneous because the

Plaintiffs did not raise specific claims of misappropriation or theft in their complaint; and (2) the trial court abused its discretion in determining the amount of attorney fees to award the Plaintiffs. We will address each of these arguments issues in turn.

### 1. Misappropriation and Theft

[19] First, the Defendants argue that the trial court's findings of fact and conclusions of law were erroneous because the trial court concluded that they had misappropriated funds and committed theft, even though the Plaintiffs did not raise misappropriation or theft claims in their complaint. Specifically, the Defendants challenge the trial court's revised (pursuant to their motion to correct errors) Finding Number 45, in which the trial court found that Richard had "committed acts of misappropriation."[3] (App. 43). With respect to theft, the Defendants challenge the trial court's Conclusions Numbers 111 and 112, in which the trial court stated the elements for a theft claim and concluded that Richard had "knowingly and intentionally exerted unauthorized control over the Partnership's funds." (App. 37).

[20] When reviewing findings of fact and conclusions of law, we apply a two-tiered standard of review by first determining whether the evidence supports the findings and then whether the findings support the judgment. *Bayview Loan*

---

[3] They also challenge the trial court's original Conclusion Number 114 in which the trial court concluded that "[t]he Defendants participated in [Richard's] misappropriation of Partnership funds and are jointly and severally liable as a result . . . ." (App. 38). Notably, this conclusion is no longer relevant, as the trial court amended it in response to the Defendants' motion to correct error.

*Servicing, LLC v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1066 (Ind. Ct. App. 2016). The trial court's findings and judgment will be set aside only if they are clearly erroneous. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* at 1066-67. To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.* at 1067. "'[E]ven an erroneous finding is not fatal to the trial court's judgment if the remaining valid findings and conclusions support the judgment, rendering the erroneous finding superfluous and harmless as a matter of law.'" *Curley v. Lake Cnty. Bd. of Elections & Registration*, 896 N.E.2d 24, 32 (Ind. Ct. App. 2008) (quoting *Lakes & Rivers Transfer v. Rudolph Robinson Steel Co.*, 795 N.E.2d 1126, 1132 (Ind. Ct. App. 2003)), *trans. denied.*

[21] Significantly, the Defendants challenge the trial court's findings of fact and conclusions of law, but they do not challenge the trial court's ultimate judgment. In fact, they acknowledge in their Appellant's Brief that "striking the conclusions related to theft will have no effect on the final judgment amount entered by the trial court," (Defendants' Br. 18), and "[s]triking the conclusions related to the misappropriation will have no effect on the final judgment amount entered by the trial court." (Defendants' Br. 19). Nevertheless, they request that we vacate the judgment. This request contradicts our well-established rule that "'even an erroneous finding is not fatal to the trial court's judgment if the remaining valid findings and conclusions support the judgment . . . .'" *Curley*, 896 N.E.2d at 32 (quoting *Lakes & Rivers Transfer*, 795 N.E.2d at

1132)).  The Defendants' acknowledgment that the judgment is not dependent on the trial court's misappropriation and theft findings and conclusions seems to inherently acknowledge that there were other findings and conclusions that supported the judgment.

[22] Regardless of whether this was the Defendants' intended implication, we find that there were other findings and conclusions to support the judgment because the trial court made significant findings and conclusions regarding the Defendants' breach of the Purchase Agreement and Guaranty.  Specifically, the trial court concluded:

> 98) The General Partner breached its contractual and fiduciary obligations under the Partnership Agreement:  not to transfer assets of the Partnership, not to comingle Partnership funds, and not to loan or advance Partnership funds to affiliates.
>
> 99) The Plaintiffs incurred damages as a result of the General Partner's breaches of its contractual and fiduciary obligations under the Partnership Agreement.
>
> 100) The Defendants are jointly and severally obligated under the Agreement of Guaranty to each of the Plaintiffs for the General Partner's breaches of the Partnership Agreement.

(App. 36).  The trial court clearly concluded that Shelby's Landing had breached the Partnership Agreement and that all of the Defendants were liable for the breach under the Guaranty Agreement.  Similarly, in Conclusions Numbers 115-117, the trial court concluded:

> 115) The Defendants breached their obligations to the Plaintiffs.

116) The Plaintiffs were harmed and damaged by the Defendant[s'] breaches.

117) The Plaintiffs were damaged in the amount of $1,596,290.46.

(App. 43). As the damages the trial court lists in Conclusion Number 117 equal the total damages the trial court awarded the Plaintiffs for the Defendants' breach of the Partnership Agreement, it is clear that the trial court did not award any additional damages for a misappropriation or theft claim. Accordingly, we conclude that the trial court's judgment was supported by findings of fact and conclusions of law and, therefore, we will not vacate it.

## 2. Attorney Fees

[23] Next, the Defendants argue that the amount of attorney fees the trial court awarded the Plaintiffs was unreasonable.[4] Specifically, they contend that it was not reasonable for the Plaintiffs' attorneys to bill the Plaintiffs a collective $385,125.26 for 1,227 hours spent on a case that, per the Defendants' description, "was essentially resolved at the preliminary injunction and

---

[4] The Defendants also argue that the trial court abused its discretion in admitting the Plaintiffs' attorney fee affidavits and invoices at trial. They argue that the trial court should not have admitted the affidavits or invoices because they were hearsay. However, the Defendants raised the same objection at trial, and the trial court admitted the affidavits on the basis that they qualified as certified business records, which are an exception to the prohibition on hearsay. *See* Ind. Evidence Rule 803(6). The Defendants do not present any arguments challenging this conclusion. Indeed, they devote only a paragraph to their hearsay argument and do not support their argument with legal authority. On appeal, it is the appellants' burden to formulate a cogent argument for the issues that they raise. *See* App. R. 46(A)(8)(a); *Kapoor v. Dybwad*, 49 N.E.3d 108, 121 n.3 (Ind. Ct. App. 2015), *trans. denied.* We will not "become an advocate for a party, nor will we address arguments [that] are either inappropriate, too poorly developed or improperly expressed to be understood." *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003). Because the Defendants have not developed a cogent argument to challenge the trial court's admission of the attorney fee affidavits and invoices, we, therefore, find the issue waived and will not address it.

summary judgment stages." (Defendants' Br. 20). We review the amount a trial court awards for attorney fees for an abuse of discretion. *Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1008 (Ind. Ct. App. 2015). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*.

[24] Even where, as here, the parties have agreed to attorney fees by contract, the award of fees must be reasonable. *Id.* Judicial notice of the reasonableness of attorney fees is permitted in certain routine actions, such as dissolutions of marriage, in which modest fees are sought. *Id.* However, where the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee. *Id.* This Court has noted that "'the hours worked and the rate charged are a common starting point for determining the reasonableness of a fee,"' but a trial court may consider a number of factors. *Id.* The trial court may look at the responsibility of the parties in incurring the attorney fees, and the trial judge has personal expertise he or she may use in determining reasonable attorney fees. *Id.* In addition, Indiana Professional Conduct Rule 1.5(a) delineates the following factors for determining a reasonable fee:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

*Id.* at 1009-10.

[25] Here, the trial court cited several factors for its award of attorney fees. First, it noted that it had "considered attorney invoices consisting of descriptions of the actual legal services performed, the hours incurred[,] and rates charged for services." (App. 42). Then, the trial court reasoned that "[t]he case involved detailed and specific agreements, factual investigation, injunction and summary judgment motions and hearings, substantial non-party discovery and a trial on damages." (App. 42-43). Further, the "Plaintiffs' claims exceeded $2,700,000, [the] Defendants' counter[-]claims sought over $4,000,000[,]" the rates Plaintiffs' counsel charged were reasonable, and the services Plaintiffs' counsel performed were "reasonable and necessary." (App. 43).

[26] The Defendants argue that the trial court abused its discretion in determining the amount of attorney fees to award the Plaintiffs because many of the Plaintiffs' issues were resolved in the partial summary judgment. They contend

that the Plaintiffs had limited discovery because they took one deposition that lasted only half of a day and performed little litigation because they spent less than a full day in court for the trial. Finally, they also argue that "the trial court should have compared PNC [Multifamily's] legal expenses with the fee customarily charged in the locality for similar legal services." (Defendants' Br. 22).

[27] Contrary to the Defendants' arguments—and as the trial court found—there was substantial discovery in this case. Although the Plaintiffs took only one deposition, the record is replete with the substantial and detailed financial records the Plaintiffs' attorneys had to investigate in order to prove the Defendants' liability under the Purchase Agreement—an issue that was not resolved through summary judgment. Also, the amount at controversy in both the claim and counter-claim was significant. We do not find it dispositive that the trial court did not compare PNC Multifamily's legal expenses with the fee customarily charged in the locality for similar services, because the trial court was not obligated to address all of the factors listed in Indiana Professional Conduct Rule 1.5(a). *See Cavallo*, 42 N.E.3d at 1010. It is clear that the trial court addressed several of the Rule 1.5(a) factors, including the time and labor required, the novelty and difficulty of the questions involved, and the amount in controversy. Based on these factors, we conclude that the trial court did not abuse its discretion in awarding the Plaintiffs $385,125.26 for their attorney fees.

[28]

Affirmed.

Kirsch, J., and Riley, J., concur.