## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 24 2017, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jon R. Pactor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey B. Kolb
Charles E. Traylor
Kolb Roellgen & Kirchoff LLP
Vincennes, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Clara Briggs,<br>*Appellant-Defendant,*<br><br>v.<br><br>Kolb Roellgen & Kirchoff LLP,<br>*Appellee-Plaintiff.* | May 24, 2017<br><br>Court of Appeals Case No.<br>42A01-1610-CC-2235<br><br>Appeal from the Knox Superior Court<br><br>The Honorable Jeffrey F. Meade, Special Judge<br><br>Trial Court Cause No.<br>42D02-1512-CC-326 |

**Robb, Judge.**

# Case Summary and Issues

[1]     Clara Briggs appeals from the trial court's entry of summary judgment in favor of Kolb Roellgen & Kirchoff, LLP ("Firm") in its action against Briggs for the recovery of unpaid legal fees, collection costs, and prejudgment interest. She raises five issues for our review, which we consolidate and restate as: 1) whether the trial court abused its discretion in denying Briggs' motion to transfer venue, 2) whether the trial court erred in denying her motion for summary judgment, and 3) whether the trial court erred in granting the Firm's motion for summary judgment. We conclude the trial court did not abuse its discretion in denying Briggs' motion for change of venue nor did it err in denying Briggs' motion for summary judgment. In addition, the trial court did not err in entering judgment in favor of the Firm in the amount of $36,188.41 as to unpaid legal fees. However, the Firm is not entitled to a portion of the collection costs awarded by the trial court as a matter of law and there is a genuine issue of material fact concerning the appropriate amount of prejudgment interest. We therefore affirm in part, reverse in part, and remand.

# Facts and Procedural History

[2]     In March 2013, Briggs contracted with Jeffrey Kolb, a partner at the Firm, to represent her in guardianship proceedings involving her mother, Anna Mae Strange. The fee agreement, prepared by Kolb and signed by Briggs, includes the following provisions:

1.  SERVICES. . . . The scope of representation is limited to: guardian of Anna May [sic] Strange with these issues: 1. Restricted account in order, 2. Payments to Caregivers from rest. acct., 3. acct. for caregiver acct. and transfer to rest. acct., 4. annual acct. of trust and 5. AIF acct.

    1.1  LIMITED REPRESENTATION.  This Agreement is limited to the legal services described above and does not include nor does it engage me to represent you in any matter not described above.

2.  FEES.  The fee shall be based on an hourly rate times the amount of time spent on your matter.

    | Lawyer's rate | $300.00 |
    | Legal Assistant's rate | $200.00 |
    | Clerical Rate | $20.00 |

3.  PAYMENT OF FEE.  You agree to pay fees to me as follows . . .:

    RETAINER.  You shall pay to me an initial retainer of $500.  This amount shall be placed in my trust account. Statements for fees or expenses sent to you will be paid from the retainer without further notice until the retainer is gone.  At that time, an additional retainer will be requested or all future statements will be sent to you monthly for payment within thirty (30) days after the date of the statement.  First recourse is petition to court for payment of fee.  To extent not paid by guardianship assets, client is liable.

* * *

9.  ADJUSTMENT.  You shall notify me in writing of any changes, deletions, additions, corrections or other adjustments to [invoices] within thirty (30) days after the date of the statement.  You agree to waive any and all objections to my statement not noticed in writing to me within thirty (30) days after the date of the statement.

10.  COLLECTION AND LATE CHARGES.  Late payments shall bear interest at the rate of 12% per annum from the first day payment is due.  You shall also pay to me an amount equal to the reasonable cost of collection incurred in collecting the late payments, recognizing that I will collect the late payment and that I am entitled to charge as collection costs my time and expenses expended in collecting the payment as normally charged to you on an hourly basis.

Appendix of the Appellant, Volume 2 at 14-15.

By October 2014, the Firm provided Briggs with a billing statement totaling $33,908.20, and during a guardianship hearing held on October 17, 2014, the Firm submitted a formal request for payment of this amount from Ms. Strange's estate.  A short time later, Ms. Strange passed away, and the Firm also began assisting Briggs in handling the closing of Ms. Strange's estate and sent subsequent invoices accordingly.  These invoices, which address services provided by the Firm from late October 2014 to September 2015 total approximately $28,000.00.  In July 2015, the Davies County Circuit Court ordered the estate to pay the Firm $23,174.00 in attorneys' fees out of the $33,908.20 the Firm originally requested on October 17, 2014, for services rendered during the guardianship proceedings.

In December 2015, Briggs and her daughter attempted to contact the Firm to raise questions about the billing statements. On December 29, 2015, the Firm sued Briggs in Knox County Superior Court to collect the $36,188.41 the Firm believed Briggs owed. Of this amount, the Firm sought the $10,734.20 not awarded by the Davies Circuit Court in the underlying guardianship case, and $25,454.21 in services rendered during the closing of Ms. Strange's estate. The Firm also sought prejudgment interest and collection costs.

On January 28, 2016, Briggs moved for change of venue, which the trial court denied, reasoning in part the motion was untimely. On March 9, 2016, the Firm moved for summary judgment. On April 8, 2016, Briggs filed a cross-motion for summary judgment. On July 19, 2016, the trial court held a hearing on the competing motions for summary judgment. On September 2, 2016, the trial court entered an order granting summary judgment in favor of the Firm and denying Briggs' motion for summary judgment. The trial court entered judgment in favor of the Firm in the amount of $36,188.41 in unpaid legal fees, $7,675.91 in collection costs, and $5,602.86 in prejudgment interest. This appeal ensued. Additional facts will be added as necessary.

# Discussion and Decision

# I. Venue

[6] Briggs contends the trial court abused its discretion in denying her motion for change of venue. The Firm counters Briggs' motion was untimely. We agree with the Firm.

[7] Trial Rule 75 requires a party challenging venue to object upon the filing of a pleading or a motion to dismiss allowed by Trial Rule 12(B)(3). The timing of presenting defenses or objections in a responsive pleading or motion is prescribed by Trial Rule 6(C). Ind. Trial Rule 12(A). Trial Rule 6(C) provides, "A responsive pleading required under these rules, shall be served within twenty (20) days after service of the prior pleading. Unless the court specifies otherwise, a reply shall be served within twenty (20) days after entry of an order requiring it." If a pleading is served by mail, service is deemed complete upon mailing, T.R. 5(B)(2),[1] and three days are added to the prescribed twenty-day period, T.R. 6(E).

[8] Here, the Firm filed its complaint and sent notice of the complaint by certified mail to Briggs on December 29, 2015. Having not yet filed a responsive pleading, Briggs moved for change of venue pursuant to Trial Rule 12(B)(3) on January 28, 2016, beyond the twenty-three-day deadline prescribed by the rules

---

[1] Briggs contends the prescribed period to challenge venue by a responsive pleading or motion "does not begin to run before the defendant receives the complaint and summons." Brief of the Appellant at 21. Briggs does not cite any authority in support of this contention and we conclude such a contention is at direct odds with Trial Rule 5(B)(2) and therefore without merit.

above. We conclude, as the trial court did, Briggs' motion was untimely, and therefore the trial court did not abuse its discretion in denying it.

## II. Summary Judgment

[9] Briggs also appeals from the trial court's denial of her motion for summary judgment and the trial's entry of summary judgment in favor of the Firm. When reviewing a grant or denial of summary judgment, our standard is the same as it was for the trial court: we determine whether there is a genuine issue of material fact, and if not, whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 137 (Ind. 2016). All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 675 (Ind. Ct. App. 2007), *trans. denied*. The fact the parties have filed cross-motions for summary judgment does not alter our standard of review. *Id*. at 676. Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id*. "We will affirm a summary judgment ruling on any legal theory which is consistent with the designated evidence in the record." *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind. Ct. App. 1994), *trans. denied*.

### A. Scope of Representation

[10] Before we discuss the merits of the parties' general contentions, it is necessary to first address what services rendered by the Firm fell within the parties' fee

agreement. Specifically, the issue is whether the services rendered following the death of Ms. Strange in October 2014 were governed by the fee agreement. The parties' agreement provides in relevant part,

> 1. SERVICES. . . . The scope of representation is limited to: guardian of Anna May [sic] Strange with these issues: 1. Restricted account in order, 2. Payments to Caregivers from rest. acct., 3. acct. for caregiver acct. and transfer to rest. acct., 4. annual acct. of trust and 5. AIF acct.
>
> > 1.1 LIMITED REPRESENTATION. *This Agreement is limited to the legal services described above* and does not include nor does it engage me to represent you in any matter not described above.

App. of the Appellant, Vol. 2 at 14 (emphasis added).

[11] Unless terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *Shorter v. Shorter*, 851 N.E.2d 378, 383 (Ind. Ct. App. 2006). Unambiguous terms are deemed conclusive. *Id.* A document is not ambiguous merely because the parties disagree about a term's meaning; rather, language is ambiguous if reasonable people could come to different conclusions as to its meaning. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006).

[12] Here, the language of the fee agreement unambiguously dictates the parties agreed the Firm would only render services in the underlying guardianship proceeding, specifically providing the Firm would assist Briggs with certain enumerated services. Moreover, the agreement provides the fee agreement was limited to those services only. There is no mention of the Firm continuing to

assist Briggs once the guardianship was terminated following the death of Ms. Strange. We therefore conclude the Firm represented Briggs in the underlying guardianship matter until October 2014 and the services rendered up until that point were governed by the parties' fee agreement. The services rendered subsequent to Ms. Strange's death in October 2014 were not governed by the parties' fee agreement. This distinction becomes relevant below.

## B. Briggs' Motion for Summary Judgment

[13] Briggs contends the trial court erred as a matter of law in denying her motion for summary judgment, arguing the Firm's claim for unpaid legal fees is barred by the doctrine of *res judicata*. We disagree.

[14] *Res judicata* is typically separated into two components: claim preclusion and issue preclusion. *Thrasher, Buschmann, & Voelkel, P.C. v. Adpoint Inc.*, 24 N.E.3d 487, 494 (Ind. Ct. App. 2015). Briggs claims both components bar the Firm from litigating this claim. Issue preclusion, also known as collateral estoppel, "bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent suit." *Id.* Issue preclusion also applies if the second adjudication is on a different claim. *Id.* In order for the rule to apply, the party invoking issue preclusion must prove: 1) a final judgment on the merits, 2) identity of the issues, and 3) the party to be estopped from relitigating the issue was a party or the privy of a party in the prior action. *Id.* We have also noted two additional considerations are relevant in determining whether issue

preclusion is appropriate: 1) whether the party to be estopped had a full and fair opportunity to litigate the issue, and 2) "whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Id*. (citation omitted).

[15]     Also, the doctrine of *res judicata*, also known as claim preclusion, bars litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. The principle behind this doctrine, as well as the doctrine of collateral estoppel, is the prevention of repetitive litigation of the same dispute. The following four requirements must be satisfied for a claim to be precluded under the doctrine of *res judicata*: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Id*. (citations omitted). Thus, both claim preclusion and issue preclusion contain similar elements. *See id*.

[16]    At the outset, we note any claim to fees accumulating after October 2014 are not barred by *res judicata* because the issue of these fees was clearly never litigated. These fees were generated subsequent to the Firm's request for guardianship fees to be paid out of the guardianship estate. Further, and as our discussion below indicates, the Firm is not barred from seeking payment of these fees even if it had requested a portion of these fees be paid from Ms. Strange's estate. Thus, we must only address whether *res judicata* bars the Firm

from seeking payment of the $10,734.20 not awarded by the Davies Circuit Court out of Ms. Strange's estate.

[17] In *Thrasher*, Adpoint contracted with Thrasher, Buschmann, & Voelkel, P.C. ("TBV"), a law firm, to represent the company in selling its franchise to R. Myers & Associates. 24 N.E.3d at 490. The contract between Adpoint and TBV listed the hourly rate for various attorneys at the firm and provided TBV would bill for its services on an hourly basis. The contract also provided TBV reserved the right to charge a monthly late fee if Adpoint was delinquent. After Adpoint and R. Myers & Associates entered into a promissory note and asset purchase agreement, R. Myers & Associates breached. Litigation ensued and TBV continued to represent Adpoint. During this underlying litigation, TBV requested attorneys' fees in the amount of $76,206.13 pursuant to the terms of the promissory note and asset purchase agreement. The trial court ultimately entered judgment in favor of Adpoint and against R. Myers & Associates in the amount of $86,595.43 plus interest, which included $50,804.08 in attorneys' fees. Thereafter, Adpoint paid TBV $39,653.60.

[18] Months later, TBV filed its Complaint on Account, on Account Stated, and Breach of Contract against Adpoint, seeking $53,712.89 and alleging in part Adpoint still owed TBV attorneys' fees from the underlying litigation and additional attorneys' fees under the parties' contract. Each party moved for summary judgment. In opposing TBV's motion, Adpoint argued *res judicata* dictated it had only owed TBV a total of $50,804.08, of which it had already paid TBV $39,653.60. Thus, Adpoint contended it only owed TBV $11,150.48,

the difference between the trial court's attorneys' fee award and the amount Adpoint had already paid. Following a hearing, the trial court entered judgment in favor of TBV and against Adpoint in the amount of $11,150.48. TBV appealed.

[19] On appeal, both parties contested the application of issue preclusion and claim preclusion to TBV's claims. We first summarized the elements of each rule, and relevant here, noted the similarities between issue preclusion's identity of the issues requirement and claim preclusion's requirement that the issue was or could have been determined in the prior action. *See id*. at 494 ("[Issue preclusion] requires that the issue being raised has been identified in the previous litigation; similarly, for a subsequent claim to be barred by the doctrine of *res judicata* [or claim preclusion], it must be shown that the matter now at issue was, or could have been, determined in the prior action."). We therefore examined whether the issue of the sum owed by Adpoint to TBV pursuant to the contract satisfied either of these elements.

[20] TBV argued the amount owed by Adpoint under the contract was never litigated and therefore neither issue preclusion nor claim preclusion barred its action. Adpoint countered the issue was previously litigated, evidenced by the trial court determining the amount of reasonable attorneys' fees during the underlying litigation. Upon review of the trial court's order in the underlying litigation, we determined the trial court merely ordered

> R. Myers *reimburse* Adpoint for certain reasonable attorney fees
> incurred by Adpoint during the Underlying Litigation pursuant

> to the terms of the Promissory Note and Asset Purchase
> Agreement. It did not, however, consider the total amount
> Adpoint owed to TBV for services rendered under the contract
> between Adpoint and TBV."

*Id.* at 495. We therefore concluded neither issue preclusion nor claim preclusion barred TBV from seeking additional payment under the contract.

Similar to *Thrasher*, Briggs contracted with the Firm to provide services in guardianship proceedings. As the guardianship proceedings came to a close, the Firm petitioned the Davies Circuit Court to order attorneys' fees be paid out of the guardianship estate. A review of the Davies Circuit Court order that the estate reimburse the Firm with reasonable attorneys' fees indicates the court was never provided the contract between Briggs and the Firm and therefore the court could not have possibly considered the total amount Briggs owed the Firm for services rendered under the contract. We therefore conclude—consistent with *Thrasher*—neither issue preclusion nor claim preclusion bar the Firm from litigating its claim for unpaid legal fees. The trial court did not err in denying Briggs' motion for summary judgment.

## C. The Firm's Motion for Summary Judgment

### 1. Unpaid legal fees

#### a. Services Rendered Pursuant to the Fee Agreement

Between March 2013 and October 2014, the Firm represented Briggs pursuant to a fee agreement regarding the guardianship of Ms. Strange. In October 2014, the Firm requested the Davies Circuit Court award it $33,908.20 out of Ms.

Strange's estate, of which the court deemed $10,734.20 unreasonable. In the present case, the Firm sought in part from Briggs, and the trial court awarded in part, the additional $10,734.20. The only argument raised by Briggs challenging this portion of the award is that there is a genuine issue of material fact as to its reasonableness. Specifically, she cites to the fact Davies Circuit Court already deemed this amount unreasonable and therefore it would be contradictory for a trial court to later deem this amount to be reasonable in a subsequent proceeding. We emphasize, however, the Davies Circuit Court merely determined the reasonableness of the requested attorneys' fees as to the underlying guardianship matter, not the parties' fee agreement. In fact, the Davies Circuit Court was never even provided the parties' fee agreement. Therefore, the fact the Davies Circuit Court did not order this amount be paid out of the estate does not create a genuine issue of material fact as to the reasonableness of the fees charged. Briggs' argument fails and we conclude the trial court did not err in awarding the Firm $10,734.20 pursuant to the fee agreement.

*b. Services Rendered Outside the Scope of the Fee Agreement*

[23] Between October 2014 and December 2015, the Firm represented Briggs in the closing of Ms. Strange's estate and the trial court awarded the Firm $25,454.21 for services rendered during this time. No express fee agreement governed these services and therefore some other legal theory must apply in order for the Firm to be entitled to these fees. The parties first dispute whether the law of accounts stated, as argued by the Firm in its motion for summary judgment,

entitles the Firm to payment for services rendered during this period.[2] *See*

*B.E.I., Inc. v. Newcomer Lumber & Supply Co., Inc.*, 745 N.E.2d 233, 236-37 (Ind.

Ct. App. 2001) (describing the law of account stated). However, because we

previously concluded the Firm did not render these services pursuant to a fee

agreement and the law provides we may affirm the trial court on any legal

theory supported by the designated evidence, *see Wickey*, 642 N.E.2d at 265, we

conclude the Firm is entitled to reasonable fees for services rendered during the

closing of Ms. Strange's estate under a theory of *quantum meruit*.[3]

[24]     In situations where there is no express agreement between parties, a plaintiff

may recover under a theory of *quantum meruit*, also known as unjust

enrichment, contract implied-in-law, quasi-contract, or constructive contract.

*Kelly v. Levandoski*, 825 N.E.2d 850, 860 (Ind. Ct. App. 2005), *trans. denied*.

> These theories are legal fictions invented by the common law
> courts in order to permit recovery where in fact there is no true
> contract, but where, to avoid unjust enrichment, the courts
> permit recovery of the value of the services rendered just as if
> there had been a true contract. . . .
>
> The purpose of these equitable theories is to force those who

---

[2] The parties dedicate much of their arguments to addressing whether an account stated arose between the parties. In arguing one did arise, the Firm relies heavily on paragraph nine of the parties' fee agreement, which provides Briggs with thirty days to object to a billing statement. Briggs counters such a provision is void as against public policy. As is apparent throughout our decision, the provision is irrelevant to the task at hand. However, we caution such a provision could potentially, under different facts, be troublesome.

[3] The Firm raised this argument as a theory supporting the trial court's judgment. *See* Brief of Appellee at 46. Briggs did not address this claim in either her Brief of the Appellant or Reply Brief of the Appellant.

have been unjustly enriched at the expense of another party to make restitution to that other party.

A party seeking to recover on a theory of *quantum meruit* must demonstrate that a benefit was rendered to another at the express or implied request of such other party. The plaintiff must also demonstrate that to allow the defendant to retain the benefit without paying for it would be unjust and that the plaintiff expected payment.

*Id*. at 860-61 (citations omitted).

[25] Here, the designated evidence establishes Briggs sought representation in guardianship matters regarding Ms. Strange and contracted with the Firm. The agreement did not, however, cover any services provided by the Firm subsequent to Ms. Strange's death and the parties did not expressly agree the Firm would continue rendering services on behalf of Briggs. Yet, between October 2014 and December 2015, the Firm rendered services, billed Briggs accordingly, and Briggs did not question any billings until December 2015. Therefore, Briggs, at the very least, implicitly requested the Firm render its services for her benefit and the Firm expected payment in return. It would be unjust for Briggs to receive a benefit from the Firm's services without the Firm receiving payment for services rendered. The Firm is therefore entitled to reasonable attorneys' fees for services rendered during October 2014 and December 2015.

[26] Under a theory of *quantum meruit*, a party may be able to recover the value for services rendered just as if a true contract existed. *Mueller v. Karns*, 873 N.E.2d

652, 659 (Ind. Ct. App. 2007). And regardless of whether attorneys' fees are awarded pursuant to a contract, the fees must be reasonable. *Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1002 (Ind. Ct. App. 2015). Although not entirely clear from her brief, it appears Briggs argues there is a genuine issue of material fact as to the reasonableness of these fees because the Firm only designated evidence of its hourly rate and the number of hours it dedicated to Briggs' cause. Stated differently, Briggs believes more evidence is required to prove the reasonable value of the Firm's services.

[27]　Determining the value of services rendered is ultimately a question of fact for the trial court. *Nunn Law Office v. Rosenthal*, 905 N.E.2d 513, 520 (Ind. Ct. App. 2009). A trial court may take judicial notice of the reasonableness of attorneys' fees in certain routine actions in which modest fees are sought. *Shelby's Landing-II, Inc. v. PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship*, 65 N.E.3d 1103, 1112 (Ind. Ct. App. 2016). "However, where the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee." *Id*. A common starting point for trial courts is to look to the hours worked and the rate charged, but a trial court is not limited to just these factors. *Id*. For example, Indiana Professional Conduct Rule 1.5(a) provides several non-exclusive factors a trial court may consider in determining the reasonableness of a fee, including the time and labor required; the difficulty of questions involved; the skill necessary to perform the service; the fee customarily charged for similar legal services in the local community, and the experience, reputation, and ability of the lawyer or

lawyers performing the services. *See id*. at 1113. In addition, the trial court may take into consideration its personal expertise in determining reasonable attorneys' fees. *Id*. at 1112-13.

[28] The record indicates the Firm submitted evidence of its hourly rate and the number of hours dedicated to Briggs' cause during this period. In addition, the Firm designated as evidence all billing statements it provided Briggs, each of which contained specific details of the legal services performed during that period. These designations provided the trial court with evidence regarding the time and labor involved, the novelty and difficulty of the questions involved, and the nature and length of the Firm and Briggs' relationship. Further, the trial court—relying on this evidence and its personal expertise—had sufficient information to determine the skill necessary to perform the services properly, the fee customarily charged for similar legal services in the local community, and the Firm's experience, reputation, and ability. And as a final point, we note Briggs did not designate *any* evidence claiming these fees were unreasonable. We therefore conclude the trial court did not err in awarding the Firm $25,454.21 for services rendered pursuant to the parties' quasi-contract.

### 2. Collection Costs

[29] Briggs also challenges the trial court's decision to award the Firm collection costs. In its motion for summary judgment, the Firm designated evidence of the costs associated with pursuing a judgment against Briggs and requested an award totaling approximately $8,200.00. The trial court only awarded

$7,675.91, which appears to indicate the trial court determined some of the costs requested by the Firm were unreasonable.

[30] The parties' fee agreement provides,

> You shall also pay to me an amount equal to the reasonable cost of collection incurred in collecting the late payments, recognizing that I will collect the late payment and that I am entitled to charge as collection costs my time and expenses expended in collecting the payment as normally charged to you on an hourly basis.

App. of the Appellant, Vol. 2 at 15. As the fee agreement demonstrates, the parties agreed the Firm was entitled to costs associated with pursuing payment for services rendered *under the fee agreement.* Therefore, the Firm is entitled to the cost of collecting the money owed by Briggs under the fee agreement.

[31] However, the Firm also accumulated costs in pursuing the money owed under the parties' quasi-contract, where there was clearly no agreement providing Briggs would be liable for the Firm's collection costs. In addition, the Firm sets forth no other legal theory under which it could claim it is entitled to costs associated with pursuing an award under the parties' quasi-contract. We therefore conclude the Firm is not entitled to collect the costs incurred in pursuing the portion of the award stemming from the parties' quasi-contract. Because it is apparent the trial court awarded most of the Firm's request for collection costs, we are left to assume the award improperly includes costs associated with the Firm's pursuit of payment for services rendered under the parties' quasi-contract. We therefore reverse this portion of the trial court's

order. On remand, we instruct the trial court to amend the award for collection costs to include only the portion of collection costs incurred in pursuing payments owed by Briggs under the fee agreement.[4]

### 3. Prejudgment Interest

[32] Briggs also challenges the trial court's decision to award the Firm prejudgment interest in the amount of $5,602.86. The parties' fee agreement provides, "Late payments shall bear interest at the rate of 12% per annum from the first day payment is due." App. of the Appellant, Vol. 2 at 15. However, the Firm acknowledges it is only charging prejudgment interest in the amount of 8% per annum. Brief of Appellee at 47. Although not entirely addressed by the parties, there appears to be a genuine issue of material fact as to the amount of prejudgment interest to be awarded by the trial court. First, we note the Firm is very much entitled to prejudgment interest on the $10,734.20 owed by Briggs under the fee agreement at a rate of 8% per annum. It appears the Firm believes interest began accruing on this amount immediately following this amount's inclusion in the October 2014 billing statement. However, the fee agreement clearly provides interest was not due to accrue until thirty days after

---

[4] Although we reverse and remand on this issue, we further note our concern as to the reasonableness of the collection costs as requested by the Firm and awarded by the trial court. The designated evidence indicates the Firm requested costs related to a motion for default judgment the Firm never filed. Such costs do not appear to be reasonable. Granted, the trial court may have already taken this into consideration in determining the amount of collection costs owed to the Firm, but in light of the fact the trial court did not enter any findings and we are nonetheless reversing the award and remanding to the trial court, we opt to take the safe route and inform the trial court of our concern as it will now be charged with amending the award for collection costs.

payment was due and therefore interest could not have begun accruing until after October 2014.

[33]    Second, the affidavit of attorney Kolb provides, "In the Guardianship case, Ms. Briggs knew I was not going to be paid for my legal work until after the Court in the Guardianship case decided how much of my fee should be paid out of the Guardianship Estate." App. of the Appellant, Vol. 3 at 83 (Second Affidavit of Jeffrey B. Kolb).[5] Regardless of what attorney Kolb thought Briggs' knew, we can at the very least infer from this statement that attorney Kolb informed Briggs he would not be expecting payments under the fee agreement until *after* he was paid out of the guardianship estate, which did not occur until July 2015. This, of course, is at odds with the terms of the parties' fee agreement and it appears unjust the Firm would receive the added benefit of interest accruing on the amount owed when it knew all along it would not expect payments from Briggs until after the Davies Circuit Court addressed the payment of attorneys' fees from the guardianship estate. We therefore conclude there is a genuine issue of material fact as to when the interest began accruing on the amount owed under the fee agreement.

---

[5] In its motion for summary judgment, the Firm designated as evidence the affidavit of attorney Kolb. Briggs then moved to strike portions of the affidavit, claiming several portions contained inadmissible statements. The trial court never ruled on Briggs' motion, and now on appeal, she asserts the trial court erred in not granting her motion. We agree with Briggs there are some portions of Kolb's affidavit that are inadmissible, evidenced by a portion of the quote above which includes Kolb's statement regarding Briggs' knowledge. We further note most of Kolb's affidavit is irrelevant to the issues before us. In any event, it is necessary to emphasize that at no point in the process of reaching this decision did we rely on *any* portion of Kolb's affidavit apart from the portion quoted above.

[34] Third, we note the Firm claims the prejudgment interest on the $10,734.20 owed by Briggs is approximately $1,500 based on its belief interest began accruing at 8% per annum sometime around October 2014. Even if we were to accept this as true, this amount dictates the trial court must have awarded approximately $4,100.00 in prejudgment interest on the $25,454.21 owed by Briggs under the quasi-contract. We certainly acknowledge "an award of prejudgment interest may be proper when the underlying judgment rests on a theory of *quantum meruit* rather than the terms of a contract." *Warfield v. Dorey*, 55 N.E.3d 887, 895 (Ind. Ct. App. 2016). However, even assuming the Firm had rendered $25,454.21 worth of services under the quasi-contract by October 17, 2014, which it clearly did not,[6] the prejudgment interest would only amount to approximately $3,800.00—if done at 8% per annum—by the time the trial court entered judgment in favor of the Firm. We therefore conclude the award of prejudgment interest is flawed and reverse this portion of the trial court's order. On remand, we instruct the trial court to calculate and award prejudgment interest in favor of the Firm after taking into consideration our discussion above.

# Conclusion

[35] We conclude the trial court did not abuse its discretion in denying Briggs' motion for change of venue, in denying Briggs' motion for summary judgment,

---

[6] To be clear, the Firm did not accumulate $25,254.21 worth of fees until late 2015.

or in granting the Firm's motion for summary judgment to the extent the Firm is entitled to unpaid legal fees in the amount of $36,188.41. However, we further conclude the Firm is not entitled to a portion of the collection costs awarded by the trial court as a matter of law and there is a genuine issue of material fact as to the amount of prejudgment interest to be awarded. Accordingly, we affirm in part, reverse in part, and remand.

[36] Affirmed in part, reversed in part, and remanded.

Kirsch, J., and Barnes, J., concur.